GRIEVANCE COMMITTEE, WYOMING
STATE BAR, Petitioner,

v.

William A. RINER, Respondent.

No. D–88–6.

Supreme Court of Wyoming.

Dec. 7, 1988.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Gerald P. Luckhaupt, Asst. Atty. Gen., Cheyenne, for petitioner.

Frederic C. Reed, Cheyenne, for respondent.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

## ORDER OF SUSPENSION OF THE RIGHT TO PRACTICE LAW

CARDINE, Chief Justice.

The Grievance Committee of the Wyoming State Bar has presented to this Court its Report, Findings and Recommendation which incorporates its Findings of Fact, Conclusions of Law, and Recommended Action, a copy of which is attached to this Order as Appendix A and hereby incorporated herein by reference, charging the above-named respondent-attorney (respondent), regularly admitted to the practice of law in the State of Wyoming, with professional misconduct in his office as an attorney at law. The respondent has filed his Exceptions to Report of Grievance Committee in accordance with the former version of Rule VI(g)(2) of the Disciplinary Code

for the Wyoming State Bar, together with relevant portions of the Transcript of Hearing before the Grievance Committee. Both parties have filed briefs in accordance with the Order Setting Time for Filing Briefs and Setting the Matter for Argument entered in this case on August 26, 1988. The Court, having considered the file and record of the Court, the proceedings before the Grievance Committee of the Wyoming State Bar, the responsive pleading of the respondent, and the briefs and arguments of the parties, finds and rules:

The primary contention of the respondent to be addressed in this matter is whether an attorney who undertakes a probate matter pursuant to the Wyoming Probate Code is the attorney for the estate or the attorney for the personal representative. The thrust of this contention is that, as a matter of law, the relationship of attorney and client did not exist between the complainant in this matter and the respondent. Other issues are raised with respect to whether a violation of a disciplinary rule of the Code of Professional Responsibility requires a finding of intent before the imposition of discipline; whether borrowing money without regard to the existence of an attorney-client relationship amounts to conduct involving dishonesty, fraud, deceit or misrepresentation, and conduct adversely reflecting on the fitness to practice law; whether the failure to repay money borrowed from the complaining party constitutes engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; whether inability to repay amounts to a violation of the disciplinary rules by not promptly paying or delivering over the funds of a client when requested to do so; whether the inclusion of a charge in the Report of the Grievance Committee which was not contained in the complaint violates the right of the respondent to due process; and the extent of the disciplinary action that should be imposed. The Court is satisfied that an attorney-client relationship existed between the respondent and the complainant to the Grievance Committee. Consequently, the Court concludes that there was a violation of the discipli-

nary rules and appropriate discipline hereby is imposed.

This matter comes before the Court according to Rule VI(i), Disciplinary Code for the Wyoming State Bar, which provides:

"(i) Whenever the committee shall recommend to the Supreme Court that an attorney be disciplined and shall file its report, findings and recommendations with the clerk of the Supreme Court (with a copy mailed to the respondent-attorney and his or her counsel), the said respondent-attorney shall within twenty (20) days after the mailing of such copy file with the clerk of the Supreme Court six (6) copies of:

"(1) A statement that respondent does not wish to file exceptions to the report, findings and recommendations; or

"(2) Respondent's exceptions to said report stating the explicit reasons for the exceptions together with a brief prepared in accordance with Rule 5.01 of the Wyoming Rules of Appellate Procedure.

"If the respondent-attorney files a statement that respondent does not wish to file exceptions to the report or, if the respondent-attorney fails to respond, the court shall proceed with such discipline as it may determine to be proper. If the respondent-attorney files exceptions as required herein, properly supported with a brief and a transcript of relevant portions thereof, the court immediately shall calendar the matter for such briefs or arguments as it may deem appropriate and shall thereafter enter its judgment. During its review, the Supreme Court shall not receive or consider any evidence that was not presented to the committee."

The Grievance Committee of the Wyoming State Bar submitted its Report to the Court on August 1, 1988. The Exceptions of the respondent were filed on August 19, 1988 and, following compliance with the briefing schedule which was ordered by the Court, argument was held on October 4, 1988.

The specific issues raised by the respondent in his brief are:

"1. Under the Wyoming Probate Code, is an attorney who undertakes to probate a decedent's Will the attorney for the estate or the attorney for the Personal Representative?

"2. As a matter of law did an attorney-client relationship exist between Respondent and Complainant?

"3. Does violation of a Disciplinary Rule of the Code of Professional Responsibility for attorneys require a finding of intent before discipline can be imposed?

"4. Did the actions of Respondent in borrowing money from the Complainant, whether or not an attorney-client relationship existed as a matter of law, constitute Respondent's engaging in conduct involving dishonesty, fraud, deceit or misrepresentation and conduct which adversely reflects on Respondent's fitness to practice law in violation of DR1–102(A)(4) and (6)?

"5. Did the actions of the Respondent in failing to repay the money borrowed from the Complainant Avis Wagner constitute engaging in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR1–102(A)(4)?

"6. Did Respondent's inability to repay the monies borrowed constitute a violation of DR9–102(B)(4) by not promptly paying or delivering over the funds of a client when requested to do so?

"7. Does the inclusion of a separate charge of misconduct in the Report of the Grievance Committee to the Supreme Court, which was not contained in the Complaint for Formal Disciplinary Proceedings violate Respondent's Constitutional Right of Due process?

"8. In the event the Court finds the Respondent to have violated one or more of the provisions of the Disciplinary Code what disciplinary action, if any, would be in the best interest of the Respondent, the Complainant, the Bar Association and the Public?"

Constitutionally, statutorily, by the Court's own rules, and as an inherent responsibility, this Court is charged with supervising those attorneys who practice law in the courts of this state. In each instance in which a recommendation is made by the Grievance Committee, the Court must examine the evidence, make findings, determine whether there has been a violation of appropriate standards of conduct, and impose the discipline which is perceived to be appropriate. *Mendicino v. Whitchurch,* 565 P.2d 460 (Wyo.1977).

The respondent contends that he was attorney for the estate of Harvey P. Armstrong, and that the attorney-client relationship existed only with respect to the estate. The logic of this position is that there was no attorney-client relationship with the complainant, Mrs. Avis A. Wagner, who served as personal representative for the estate. We do not agree with, and we do not accept, this position. The facts manifested by the records in this matter demonstrate that Mrs. Wagner consulted with the respondent and employed him to furnish legal advice to her and to assist her in closing the Armstrong estate. Formality is not required to establish an attorney-client relationship. Ordinarily, the relationship rests on contract, but the contract need not be express. It may be implied from the conduct of the parties, for example, the giving of advice and assistance or the awareness of the attorney of reliance on the relationship. Whether the relationship of attorney-client exists depends on the facts and circumstances of each case. *Carlson v. Langdon,* 751 P.2d 344 (Wyo. 1988); *Chavez v. State,* 604 P.2d 1341 (Wyo.1979), cert. denied 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980); ABA/BNA Lawyers' Manual on Professional Conduct, § 31:101 (1984). Mrs. Wagner had the authority, as personal representative, to employ an attorney to assist her in performing her statutory duties. 33 C.J.S. *Executors and Administrators* § 147 (1942). Without relying on any prior arrangements between the respondent, Mr. Armstrong, and Mrs. Wagner, we conclude that Mrs. Wagner and the respondent entered into an attorney-client relationship when she engaged the respondent to assist her in performing her duties as personal representative of the Armstrong estate. See *Matter of Holloway,* 514 N.E.2d 829

(Ind.1987); *Louisiana State Bar Association v. Bosworth*, 481 So.2d 567 (La.1986); *People v. Kramer*, 188 Colo. 184, 534 P.2d 313 (Colo.1975).

■ At the time of the events addressed in the Report of Grievance Committee, the respondent's conduct was governed by Canon 5, DR5–104(A)[1] of Rule 20 of the Amended Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming. The rule provides:

"DR5–104 Limiting Business Relations with a Client.

"(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

There are four significant phrases incorporated in this rule which we parse:

A lawyer shall not

(1) enter into a business transaction with a client

(2) if they have differing interests therein and

(3) if the client expects the lawyer to exercise his professional judgment therein for the protection of the client,

(4) unless the client has consented after full disclosure.

The first three phrases articulate the elements of the prohibited conduct, while the last phrase permits such an arrangement if, after full disclosure, the client consents. As we have ruled, the relationship of attorney and client was present in this case. The respondent does not question, but we expressly find, that the loans were transactions constituting a business relationship and that the interests of the parties inherently are adverse in a loan transaction. *Louisiana State Bar*, 481 So.2d at 571. Similarly, the respondent does not take issue with, but again we expressly find, the expectation of Mrs. Wagner that the re-

spondent would exercise his professional judgment for her protection with regard to these loans. Further, it is clear that her consent was obtained without the requisite full disclosure having been made by the respondent.

Accordingly, we sustain the Findings of Fact numbered 1, 3–6, and 10–36 of the Grievance Committee of the Wyoming State Bar attached hereto as Appendix A. We conclude that there was clear and convincing evidence to support the conclusion that the respondent violated Canon 5, DR5–104(A). We adopt Conclusions of Law numbered 1–7 in the Report of the Grievance Committee of the Wyoming State Bar, and that portion of Finding 8 addressing a violation of Canon 5, DR5–104(A).

■ The Grievance Committee of the Wyoming State Bar, in addition to the conclusion that the respondent had violated Canon 5, DR5–104(A), concluded that the respondent had violated Canon 1, DR1–102(A)(4) and (6)[2] (Conclusion of Law 9), Canon 1, DR1–102(A)(4) (Conclusion of Law 10), Canon 7, DR7–106(C)(7) (Conclusion of Law 11), and Canon 9, DR9–102(B)(4) (Conclusion of Law 12). The respondent has urged that Conclusions of Law 9, 10, and 12 are duplicative of the conclusion that he violated DR5–104(A) and, thus, the number of charges has been multiplied. We agree with this position asserted by the respondent and, for that reason, decline to adopt Conclusions of Law 9, 10, and 12. The respondent also has argued that the violations of the disciplinary rules relied upon in those Conclusions of Law require a finding of specific intent or wilfulness on the part of the attorney. We do not address that contention because we are declining to adopt those conclusions of law.

■ The respondent also contends that he was not given notice of the violation found in Conclusion 11 (accepting payment of attorney fees for closing of the estate without the approval of the court), and he

---

1. The Disciplinary Code for the Wyoming State Bar was revised in 1986, and this provision now appears in similar language in Rule 1.8, Rules of Professional Conduct for Attorneys at Law.

2. Parenthetically, we note that the Committee's Report inadvertently numbered this violation as DR1–101(A)(4) and (6), although the language quoted is from DR1–102(A)(4) and (6).

had no opportunity to be heard with respect to it. In *Whitchurch*, 565 P.2d at 473–474, we held that the Grievance Committee may not consider charges without furnishing notice to the respondent and the opportunity to be heard after notice. In this instance, the respondent was not furnished with the proper notice relating to this allegation. Rather, the alleged violation seems to have developed during the conduct of the hearing, and it then was added to the report because of that occurrence. For this reason, we decline to adopt Conclusion of Law 11.

■ To summarize, we are satisfied that the evidence is clear and convincing to demonstrate that the respondent violated Canon 5, DR5–104(A), but we decline to find any other violations of the Code of Professional Responsibility on the part of the respondent. Based upon its Findings of Fact and Conclusions of Law, the Grievance Committee of the Wyoming State Bar recommended that the respondent be suspended from the practice of law for two years with the proviso that he could petition for reinstatement after one year of the suspension. In view of our declination to accept some of the Findings of Fact and Conclusions of Law submitted by the Grievance Committee, we deem it appropriate to modify the recommendation for discipline. This we do, and it therefore is:

ORDERED that the Findings of Fact, Conclusions of Law and Recommendation of the Grievance Committee, to the extent set forth in the foregoing discussion be, and they hereby are, approved; and it further is

ORDERED that William A. Riner be, and he hereby is, suspended from the practice of law in this state for a period of two years for violation of Canon 5, DR5–104(A), adopted by Rule 20, with respect to this complaint; and it further is

ORDERED that the respondent, William A. Riner, may apply for reinstatement to the practice of law in this state after six months from the date of this order upon a

showing made that restitution to Mrs. Avis A. Wagner has been accomplished, which shall include any interest due and owing.[3]

APPENDIX A

State of Wyoming

County of Laramie

Before the Grievance Committee

Wyoming State Bar

State of Wyoming

In the Matter of

William A. Riner,

Respondent.

Docket No. (83–86)

REPORT, FINDINGS AND RECOMMENDATION

The Attorney General's Office filed a COMPLAINT FOR FORMAL DISCIPLINARY PROCEEDINGS in the Matter of WILLIAM A. RINER, Docket No. 83–86, before the Grievance Committee of the Wyoming State Bar on January 8, 1988. On January 27, 1988 the Respondent filed a MOTION FOR EXTENSION OF TIME TO ANSWER. By ORDER dated January 28, 1988, the Committee granted Respondent's motion in part, allowing him until February 8, 1988 to answer the complaint. On February 8, 1988, Respondent, through his counsel, Frederic C. Reed, filed an ANSWER TO FORMER DISCIPLINARY PROCEEDINGS. A hearing was held before the Committee on April 14, 1988. Members of the Committee present at the hearing were David F. Palmerlee, Chairman; Kathleen A. Hunt; and Joseph E. Vlastos. Committee member Dean W. Borthwick recused himself from participating in this matter. The Respondent was represented by counsel, Frederic C. Reed. The Attorney General's office was represented by Gerald P. Luckhaupt.

At the start of the hearing, Respondent made a motion to amend his answer, indicating that he did not want to admit the existence of the attorney/client relation-

3. Annotation, *Power of Court to Order Restitution to Wronged Client in Disciplinary Proceed-* *ing Against Attorney,* 75 A.L.R.3d 307 (1977).

ship. The Attorney General's office had no real objection. The motion was allowed.

The following exhibits were offered and accepted into evidence at the formal hearing without objection by counsel:

Attorney General's Exhibit A—SUPPLEMENTAL REPORT OF EXECUTOR AND PETITION FOR FINAL DISCHARGE in the Matter of the Estate of HARVEY P. ARMSTRONG, also known as HARVEY PAUL ARMSTRONG, in the District Court, First Judicial District, DOC. 30 NO. 312, and also a RECEIPT in the same action which details what the executor of the estate received.

Attorney General's Exhibit B—JUDGMENT BY DEFAULT in the Matter of WAGNER v. RINER, in the District Court, First Judicial District, DOCKET 108 NO. 226, which has the following attachments: a promissory note dated July 20, 1984 signed by William A. Riner wherein he promises to pay to the order of Avis A. Wagner the sum of $5,000.00 with interest at 15%, which note merged in the judgment by order of the district judge; and a second promissory note dated July 5, 1984 signed by William A. Riner wherein Riner agrees to pay Avis A. Wagner the sum of $5,000.00 with interest at 15% which note also merged in the judgment. All three pages of the exhibit are certified copies from the district court file.

Attorney General's Exhibit C—A receipt signed by William A. Riner dated June 4, 1984 which states he received from Avis A. Wagner $1,500.00 for attorney fees regarding the Armstrong Estate.

Respondent's Exhibit 1—Personal resume of William A. Riner.

## FINDINGS OF FACT

1. Respondent is a member of the Wyoming State Bar, who maintains an office in Cheyenne, Wyoming.

2. In January of 1984, Respondent was retained by Avis A. Wagner and her brother-in-law, Harvey P. Armstrong, to draw up a power of attorney. A power of attorney was necessary to assist Mrs. Wagner in the management of Mr. Armstrong's affairs. Mr. Armstrong was elderly and bedridden at this time.

3. Mr. Armstrong died testate in February, 1984. Mrs. Wagner was the executrix under the will and also the sole legatee.

4. After Mr. Armstrong died, Mrs. Wagner called the Respondent with regard to him helping her in closing the estate. Thereafter Respondent represented Mrs. Wagner in closing the estate.

5. After payment of costs and fees, Mrs. Wagner was to receive approximately $33,000.00 from the estate. Her inheritance was to be the major source of her support during the later years of her life.

6. Mrs. Wagner was approximately 70 years old at this time.

7. On June 4, 1984, during the pendency of the estate proceedings, Mrs. Wagner personally paid Respondent $1,500.00 in cash as attorney fees for representing her in the probate proceedings. Respondent accepted the cash from Mrs. Wagner as payment of attorney fees and issued her a receipt for same.

8. This payment of attorney fees regarding the estate was accepted by Respondent without the approval of the court, in violation of W.S. 2–7–805(a).

9. Respondent knew the court had not approved the payment of any attorney fees regarding this estate when Respondent accepted the payment from Mrs. Wagner.

10. During this period of time, while the estate was still pending and had not yet been closed, Mrs. Wagner mentioned to Respondent her desire to find a safe investment for her inheritance.

11. After Mrs. Wagner had mentioned to Respondent her desire to find a safe investment for her inheritance, and before the estate had been closed, on June 26, 1984, Respondent asked Mrs. Wagner to loan him $5,000.00.

12. On July 5, 1984, respondent again asked Mrs. Wagner whether she would loan him $5,000.00. Mrs. Wagner agreed. Respondent wrote himself a check in the amount of $5,000.00 from the estate checking account, which check Mrs. Wagner signed.

13. The loan to which Mrs. Wagner agreed at the behest of the Respondent

was an unsecured loan to Respondent of $5,000.00 at 15% interest payable in full in 45 days. Respondent prepared a promissory note to this effect.

14. On neither June 26 nor July 5, 1984, nor at any other time did Respondent advise Mrs. Wagner to seek independent legal advice, nor did he advise Mrs. Wagner of the risks and disadvantages of loaning money without receiving proper collateral therefor, nor did he advise Mrs. Wagner of his financial condition.

15. Approximately two weeks after the first loan, Respondent asked Mrs. Wagner for another unsecured loan of $5,000.00.

16. Mrs. Wagner agreed to loan Respondent another $5,000.00. Respondent prepared a handwritten promissory note which allowed for interest at 15% and repayment in full in 30 days. The funds came from the estate.

17. Not at the time of the second loan, nor at any time preceding or subsequent to the loan, did Respondent advise Mrs. Wagner to seek independent legal advice, nor did he advise Mrs. Wagner of the risks and disadvantages of loans without obtaining proper collateral therefor nor did he advise Mrs. Wagner of his financial condition.

18. Both loans made by Mrs. Wagner to Respondent were not in the best interests of Mrs. Wagner.

19. At the time both loans were made by Mrs. Wagner to Respondent, Respondent could not received a loan for that amount of money from any financial institution due to his poor financial condition.

20. Respondent knew he could not receive a loan from a financial institution because of his poor financial condition.

21. Respondent did not inform Mrs. Wagner of his poor financial condition or of the fact that he could not receive a loan from a financial institution because of his poor financial condition.

22. Respondent took advantage of the faith, trust and confidence Mrs. Wagner had in him, her attorney, to borrow funds without collateral equalling almost one-third of her inheritance when Respondent knew he could not obtain such a loan of money from a bank.

23. During this period of time when Respondent requested both loans, Respondent told Mrs. Wagner that he was involved in some kind of gold deal.

24. Respondent created an impression in the mind of Mrs. Wagner that her loans were being utilized in some fashion in furtherance of these gold deals or at the least that the gold deals would provide Respondent with the money to repay the loans.

25. During this period, Respondent was the attorney for some persons, partnership or corporation which were attempting to sell gold overseas.

26. Respondent used the proceeds of the two loans to pay his own current financial obligations and operating costs of his law practice.

27. Thereafter Respondent again contacted Mrs. Wagner about loaning him an additional $5,000.00, which request Mrs. Wagner refused.

28. Mrs. Wagner is not, and never has been in, the business of loaning money nor has she experience in such affairs.

29. At all times herein, Mrs. Wagner considered the Respondent her attorney and expected Respondent to exercise his professional judgment on her behalf.

30. Mrs. Wagner was the client of Respondent during the periods of time in which she loaned Respondent money.

31. Mrs. Wagner and Respondent had differing interests in the debtor/creditor relationship which developed between them.

32. Both of the notes evidencing the sums borrowed from Mrs. Wagner were payable in full by Respondent on August 20, 1984. Respondent neither paid off the notes nor contacted Mrs. Wagner concerning the notes or any ability to repay them.

33. Between October 22, 1984 and April 26, 1985, Respondent made two payments of interest to Mrs. Wagner in the amounts of $1,176.40. However, the notes in full were not paid.

34. Mrs. Wagner was forced to retain counsel, sue on the promissory notes and obtain a judgment of $11,919.12 plus interest, plus costs and fees, against Respon-

dent. Aside from a garnishment from Respondent's bank account of $664.51 obtained by Mrs. Wagner's attorney on February 1, 1988, this judgment has not been satisfied.

35. The Committee finds the following aggravating circumstances present in this matter: dishonest motive; selfish motive; vulnerability of victim; substantial experience in the practice of law; and indifference to making restitution.

36. The Committee finds the following mitigating circumstances present in this case: absence of a prior disciplinary record; and full and free disclosure to this Committee.

## CONCLUSIONS OF LAW

1. The Committee has jurisdiction pursuant to Rules I, IV and VI of the Disciplinary Code for the Wyoming State Bar.

2. At the time of Respondent's action described in the foregoing Findings of Fact, Respondent was subject to and his conduct was governed by Rule 20 of the Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming.

3. Mrs. Wagner was the client of the Respondent when Respondent borrowed money from Mrs. Wagner.

4. In a debtor/creditor relationship, including the one between Mrs. Wagner and Respondent, the parties have differing interests.

5. Mrs. Wagner did and properly could expect Respondent to exercise his professional judgment on her behalf.

6. Mrs. Wagner was relying on Respondent for professional judgment to the same extent that Mrs. Wagner would have relied upon Respondent for professional judgment had Mrs. Wagner consulted Respondent concerning such a loan to a third party.

7. Mrs. Wagner's consent to the loans was without full disclosure by the Respondent.

8. Respondent, by soliciting and obtaining these loans from his client, Mrs. Wagner, entered into a business relationship with a client in which Respondent and Mrs. Wagner had differing interests; by failing to advise Mrs. Wagner to seek independent legal advice, by failing to advise Mrs. Wagner of the risks and disadvantages of loaning money without receiving proper collateral therefor, by failing to advise Mrs. Wagner of his financial condition, and by failing to obtain her consent after full disclosure and when Mrs. Wagner expected him to exercise his professional judgment on her behalf, violated DR5–104(A) and DR1–102(A)(1).

(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

DR1–102(A)(1) provides as follows:

(A) A lawyer shall not: ...

(1) Violate a Disciplinary Rule; ....

9. Respondent, by seeking loans from Mrs. Wagner while he was unable to obtain the same loan from a financial institution and by not disclosing that fact to Mrs. Wagner, and by soliciting these loans from Mrs. Wagner after she had disclosed to him her desire to find a safe investment for her inheritance and by using these loans to cover his personal and business expenses, violated DR1–101(A)(4) and (6).

DR1–101(4) and (6) provide as follows:

(A) A lawyer shall not: ...

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; ...

(6) Engage in any other conduct which adversely reflects on his fitness to practice law; ....

10. Respondent, by not repaying Mrs. Wagner when the loans became due and when Respondent had promised to repay the loans as evidenced by the promissory notes, violated DR1–102(A)(4).

DR1–102(A)(4) provides as follows:

(A) A lawyer shall not: ...

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; ...

11. Respondent, by accepting payment in cash from Mrs. Wagner for the payment

of attorney's fees regarding the closing of the estate of Mr. Armstrong, without prior order or approval of the court, violated DR7–106(C)(7).

DR7–106(C)(7) provides as follows:

(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

(7) Intentionally or habitually violate any established rule of procedure or evidence; ....

12. Respondent, by failing to pay those monies which Mrs. Wagner was entitled to receive, after demand by Mrs. Wagner, violated DR9–102(B)(4).

DR9–102(B)(4) provides as follows:

(B) A lawyer shall: ...

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

### RECOMMENDED ACTION

The Grievance Committee recommends that the Respondent be suspended from the practice of law for a period of two years. However, the Committee recommends that the order note that the Respondent can petition for reinstatement after one year of the suspension.

Dated this 1st day of August, 1988.

(s) David F. Palmerlee
David F. Palmerlee, Chairman
Grievance Committee
Wyoming State Bar

ATTEST:
(s) Mary Elizabeth Senkewicz
Mary Elizabeth Senkewicz
Executive Secretary, Wyoming State Bar
Grievance Committee
500 Randall Avenue
P.O. Box 109
Cheyenne, WY 82003–0109
(307) 632–9061