399 S.E.2d 894

**The COMMITTEE ON LEGAL ETHICS OF THE WEST VIRGINIA STATE BAR**

**v.**

**Eugene SIMMONS, a Member of the West Virginia State Bar.**

**No. 19681.**

Supreme Court of Appeals of West Virginia.

Nov. 30, 1990.

Cynthia Santoro Gustke, West Virginia State Bar, Charleston, for Committee on Legal Ethics of the West Virginia State Bar.

Sterl F. Shinaberry, Charleston, for Eugene Simmons.

Philip Kneisl, Newport News, Va., amicus curiae brief in support of complaint, pro se.

PER CURIAM:

This is a disciplinary proceeding instituted by the Committee on Legal Ethics of the West Virginia State Bar against Eugene Simmons, a member of the bar. The Committee has recommended that this Court suspend Mr. Simmons' license to practice law for a period of six months for entering into business transactions with his clients without making adequate disclosures to them, and without providing adequate security or other legal means to protect his clients' interests, in violation of DR 5–101(A) and DR 5–104(A). We find from the record that the Committee has met its burden of proving the charges against Mr. Simmons, and accordingly, we adopt the Committee's recommendation that Mr. Simmons' law license be suspended for a period of six months.

The case before us involves two separate complaints filed against Mr. Simmons. The first complaint involves Mrs. Betsy Jordan Edgar, who was a friend and client of Mr. Simmons. Mr. Simmons had provided various legal services for Mrs. Edgar and her late husband, such as drafting their wills, preparing a deed and a lease for property known as the "Norma Clark" farm, serving as commissioner of accounts at the time of Mr. Edgar's death, and preparing a document relating to the sale of timber owned by Mr. and Mrs. Edgar.

Mrs. Edgar's complaint against Mr. Simmons stems from the business transaction involving the sale of the "Norma Clark" farm. Mr. Simmons had advised Mrs. Edgar during the negotiations of the sale of the "Norma Clark" farm. However, when the buyer declined to purchase the farm, Mr. Simmons offered to buy it. He agreed to pay Mrs. Edgar $100,000 for the farm, $71,000 of which was to be financed over a period of ten years. Mr. Simmons did not prepare a deed of trust nor did he reserve a vendor's lien to secure the unpaid $71,000 balance of the purchase price. Mr. Simmons never advised Mrs. Edgar that she needed a deed of trust or a vendor's lien to protect her interests, and Mrs. Edgar was unaware that she needed either of these instruments. Furthermore, Mr. Simmons did not disclose to Mrs. Edgar that there may be a conflict of interest in his preparing the documents for the transfer of the farm to him nor did he advise her to consult with another attorney.

Without informing Mrs. Edgar, Mr. Simmons encumbered the "Norma Clark" farm and two other parcels of real estate with a first lien deed of trust, in the amount of $380,000, which exceeded the unpaid balance owed to Mrs. Edgar. Thereafter, Mr. Simmons defaulted in making his annual payments to Mrs. Edgar. She filed a complaint against Mr. Simmons to the State Bar on December 8, 1985. However, before final disposition of that case, Mr. Simmons made the necessary payments, and

the charges were dismissed without a hearing. The following year, Mr. Simmons again defaulted, and Mrs. Edgar refiled the complaint against him on July 24, 1987.[1]

The second complaint before us which was filed against Mr. Simmons involves a business transaction between Mr. Simmons and his client, Mrs. Flossie Waugh. Mr. Simmons had acted as an attorney for Mr. and Mrs. Waugh in several transactions. For example, he wrote a deed for Mr. and Mrs. Waugh for the sale of their home, handled the purchase of their home, prepared their wills, and agreed to present an insurance claim for Mrs. Waugh after her husband's death.

The complaint filed by Mrs. Waugh against Mr. Simmons relates to two certificates of deposit owned by Mr. and Mrs. Waugh, in the total amount of $39,000, which represented a substantial portion of their savings. Mr. Simmons borrowed the proceeds from the two separate certificates of deposit. Mr. Simmons also borrowed the early withdrawal penalty on the smaller of the two separate certificates of deposit, and lost the interest thereon. Prior to the time the certificates of deposits were cashed in to make loans to Mr. Simmons, Mr. and Mrs. Waugh's interests were fully insured by the Federal Deposit Insurance Corporation at the bank where the certificates of deposits were drawn. However, after the certificates of deposit were cashed in to make loans to Mr. Simmons, the funds were neither insured nor secured. Following Mr. Waugh's death, Mr. Simmons periodically made payments to Mrs. Waugh at the rate of 10 percent interest. Yet, these payments were not timely,

and Mrs. Waugh had to plead with Mr. Simmons to pay her the money he owed.

Thereafter, Mrs. Waugh hired an attorney in order to sue Mr. Simmons to obtain judgment for the amount of the two notes. Without first obtaining the consent of her attorney, Mr. Simmons contacted Mrs. Waugh concerning one of the issues in dispute in the litigation, and offered her $2,000 in partial settlement of her claim against him. Mr. Simmons knew that Mrs. Waugh was represented by counsel.

The hearing subcommittee submitted its report on April 21, 1990, to the full hearing panel of the Committee on Legal Ethics. The Committee subsequently adopted the report on April 26, 1990, and has recommended that Mr. Simmons' license to practice law be suspended for six months.

The sole issue in this appeal is whether Mr. Simmons has violated DR 5–101(A) and DR 5–104(A), and should be subject to disciplinary action. DR 5–101(A) provides that "[e]xcept with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests." Furthermore, DR 5–104(A) provides that "[a] lawyer shall not enter into business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

█ The Committee has found that Mr. Simmons violated DR 5–101(A) and DR 5–104(A) by entering into business transac-

---

1. The hearing subcommittee, relying on Rule 15, Chapter III of the *Rules and Regulations of the West Virginia State Bar,* found that the closing of the initial complaint without any action taken did not preclude the filing of another complaint. Rule 15 provides, in relevant part: "Upon receipt of any new information, staff counsel may reopen any case closed within the past five years which, in their sole discretion, warrants such action."

The hearing subcommittee found that the findings of fact included in the earlier proceeding by the Investigative Panel failed to disclose the lengthy attorney-client relationship between Mr. Simmons and Mr. and Mrs. Edgar, and that this relationship was proved at the hearing in the present case. The hearing subcommittee believed that the development of the evidence relating to the lengthy attorney-client relationship, in addition to the substantial risk to his client, Mrs. Edgar, as a result of his default on the promissory note, warranted reopening of this complaint. It appears that the subcommittee was exercising its discretion within the provisions of Rule 15, and therefore, we decline to rule that the hearing subcommittee's action was impermissible.

tions with long-time clients without making adequate disclosures to them, without providing adequate security or other legal means to protect their interests, and without referring them to independent counsel. The Committee recommends that Mr. Simmons be subject to disciplinary action for his conduct. We recognized in syllabus point 3 of *Committee on Legal Ethics of West Virginia State Bar v. Tatterson,* 173 W.Va. 613, 319 S.E.2d 381 (1984): "The Disciplinary Rules of the Code of Professional Responsibility state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action."

■ Since the charges have been brought against Mr. Simmons by the Committee, the burden is on the Committee to prove those charges by full, preponderating and clear evidence as we stated in syllabus point 1 of *Committee on Legal Ethics of West Virginia State Bar v. Lewis,* 156 W.Va. 809, 197 S.E.2d 312 (1973):

> In a court proceeding prosecuted by the Committee on Legal Ethics of the West Virginia State Bar for the purpose of having suspended the license of an attorney to practice law for a designated period of time, the burden is on the Committee to prove by full, preponderating and clear evidence the charges contained in the complaint filed on behalf of the Committee.

■ Mr. Simmons contends, however, that he has not violated DR 5–101(A) and DR 5–104(A), because Mrs. Edgar and Mrs. Waugh were not his clients nor did an attorney-client relationship exist between them. We addressed when an attorney-client relationship exists in syllabus point 1 of *Keenan v. Scott,* 64 W.Va. 137, 61 S.E. 806 (1908):

> As soon as a client has expressed a desire to employ an attorney and there has been a corresponding consent on the part of the attorney to act for him in a professional capacity, the relation of attorney and client has been established; and all dealings thereafter between them relating to the subject of the employment

will be governed by the rules applicable to such relation.

Furthermore, we have recognized that the attorney-client relationship can exist without an agreement for compensation. *Weimer–Godwin v. Board of Education of Upshur County,* 179 W.Va. 423, 429, 369 S.E.2d 726, 732 (1988); *Orndorff v. West Virginia Dep't of Health,* 165 W.Va. 1, 4–6, 267 S.E.2d 430, 432 (1980); *Keenan v. Scott,* 64 W.Va. at 142–44, 61 S.E. at 809. Moreover, we concur with other courts which have held that an attorney-client relationship may be implied from the conduct of the parties. *See, e.g., Matter of Petrie,* 154 Ariz. 295, 742 P.2d 796 (1987); *Fox v. Pollack,* 181 Cal.App.3d 954, 226 Cal.Rptr. 532 (1986); *People v. Razatos,* 636 P.2d 666 (Col.1981), *appeal dismissed,* 455 U.S. 930, 102 S.Ct. 1415, 71 L.Ed.2d 639 (1982); *Kurtenbach v. Tekippe,* 260 N.W.2d 53 (Iowa 1977); *Matter of Adoption of Baby Boy Irons,* 235 Kan. 540, 684 P.2d 332 (1984); *Page v. Frazier,* 388 Mass. 55, 445 N.E.2d 148 (1983); *In re Palmieri,* 76 N.J. 51, 385 A.2d 856 (1978); *Grievance Committee, Wyoming State Bar v. Riner,* 765 P.2d 925, 927 (Wyo.1988). We will, therefore, look to the specific facts and circumstances of each case to determine whether an attorney-client relationship exists.

■ First, we find that the record before us supports the Committee's finding that an attorney-client relationship existed between Mr. Simmons and Mrs. Edgar, and between Mr. Simmons and Mrs. Waugh. Mrs. Edgar and Mrs. Waugh had each employed Mr. Simmons as an attorney to act in a professional capacity. Mrs. Edgar and Mrs. Waugh both believed that they had an ongoing attorney-client relationship with Mr. Simmons. Furthermore, there is nothing in the record which indicates that Mr. Simmons ever advised either of them that their attorney-client relationship no longer existed or that he was not acting in his capacity as their attorney. Clearly, an attorney-client relationship can be implied from the conduct of the parties.

Second, we find that the Committee has met its standard of proof for the charges that Mr. Simmons entered into business

transactions with long-time clients without making adequate disclosure to them, without properly protecting their interests, and without referring them to independent counsel. When Mr. Simmons purchased the "Norma Clark" farm, he did not prepare a deed of trust nor did he reserve a vendor's lien to secure the $71,000 unpaid balance of the purchase price. He never advised Mrs. Edgar that there was a conflict of interest in his preparing the documents for the transfer of the farm. Nor did he ever recommend that Mrs. Edgar discuss this matter with another attorney. Moreover, Mr. Simmons encumbered the farm with a first lien deed of trust, which exceeded the unpaid balance of the purchase price, without consulting Mrs. Edgar.

With respect to Mrs. Waugh's complaint, Mr. Simmons borrowed the proceeds from two separate certificates of deposit, and also borrowed the early withdrawal penalty on the smaller of the two, and lost the interest thereon. He did nothing to insure or secure the funds after the certificates of deposit were cashed in to make loans to him. Mr. Simmons also failed to make timely payments to Mrs. Waugh. Furthermore, when she filed suit against him to recover the money, he contacted her to offer her a settlement instead of consulting her attorney in violation of DR 7–104(A)(1).[2]

Finally, after careful consideration of the facts and circumstances of this case, we conclude that the recommendation of the Committee that Mr. Simmons' license to practice law be suspended for a period of six months is proper. We further conclude that Mr. Simmons should reimburse the Committee for the expenses it has incurred in connection with this proceeding. This Court has recognized that such an award is appropriate. *See Committee on Legal Ethics of West Virginia State Bar v. White,* 176 W.Va. 753, 349 S.E.2d 919 (1986); *Committee on Legal Ethics of*

*West Virginia State Bar v. Pence,* 161 W.Va. 240, 240 S.E.2d 668 (1977).

For the reasons set forth herein, the license to practice law of Eugene M. Simmons is suspended for a period of six months. Mr. Simmons is further directed to bear a portion of the cost of this proceeding.

Six-month suspension.

---

**2.** DR 7–104(A)(1) provides:
**DR 7–104 Communicating With One of Adverse Interest.**—(A) During the course of his representation of a client a lawyer shall not: (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.