IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

_____

No. 13-0544

_____

**FILED**

**November 25, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

JOHN F. HUSSELL, IV, a member of The
West Virginia State Bar,
Respondent

_____

Lawyer Disciplinary Proceeding
No. 11-05-289

STATEMENT OF CHARGES DISMISSED

_____

Submitted: September 3, 2014
Filed: November 25, 2014

Jessica H. Donahue Rhodes, Esq.
Lawyer Disciplinary Counsel
Charleston, West Virginia
Counsel for the Petitioner

Benjamin L. Bailey, Esq.
Michael B. Hissam, Esq.
Bailey & Glasser LLP
Charleston, West Virginia
Counsel for the Respondent

JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.
JUSTICE KETCHUM dissents and reserves the right to file a concurring opinion.
JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.      "A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  Syl. pt. 3, *Comm. on Legal Ethics of the W. Va. State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).


2.      "As soon as the client has expressed a desire to employ an attorney and there has been a corresponding consent on the part of the attorney to act for him in a professional capacity, the relation of attorney and client has been established; and all dealings thereafter between them relating to the subject of the employment will be governed by the rules applicable to such relation." Syl. pt. 1, *Keenan v. Scott*, 64 W. Va. 137, 61 S.E. 806 (1908).

Benjamin, Justice:

This is a lawyer disciplinary proceeding instituted by the Office of Disciplinary Counsel ("ODC") against John F. Hussell IV, ("Mr. Hussell"). ODC alleges that Mr. Hussell violated the Rules of Professional Conduct ("Rules") by engaging in a sexual relationship with his then-client Carolyn L.,[1] and by providing legal advice to her against her husband's interest, who was also Mr. Hussell's then-client. Concluding that the allegations had been proven by clear and convincing evidence, the Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board recommended that Mr. Hussell's law license be suspended for ninety days, with automatic reinstatement. The HPS also recommended that Mr. Hussell's practice be supervised for one year by an attorney agreed upon between the ODC and Mr. Hussell. In addition, the HPS recommended that Mr. Hussell undergo a psychiatric evaluation to determine his fitness to practice law. Finally, the HPS recommended that Mr. Hussell pay the costs of this proceeding. Mr. Hussell and ODC agreed to the imposition of these sanctions.

---

[1] Because of the sensitive nature of the facts alleged in this case, we have referred to the complainant, his wife and other members of his family, by the first initial of their surname. *See State v. Edward Charles L*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

This Court did not agree with the recommended disposition and scheduled the case for oral argument.[2] The Court has before it the recommendation of the HPS, all matters of record, the briefs, and the arguments of counsel. Based upon our review and for the reasons stated herein, this Court rejects the recommendations of the HPS and finds that because there was no attorney-client relationship between Mr. Hussell, and James and Carolyn L. at the time of the acts complained of herein, such joint relationship having ended by James L.'s firing of Mr. Hussell on January 10, 2010, Mr. Hussell did not violate the rules for which he was charged. Accordingly, we dismiss the Statement of Charges against Mr. Hussell.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent, Mr. Hussell, is a lawyer practicing in Charleston, West Virginia. He was admitted to the West Virginia State Bar on October 3, 1994. This proceeding arises from the June 27, 2011, complaint of James L. James L. and his wife, Carolyn, jointly engaged Mr. Hussell's estate planning services on or near September 12,

---

[2] This Court is not bound by the agreement between Mr. Hussell and ODC. Rule 3.12 of the Rules of Lawyer Disciplinary Procedure states that

> [i]f the Court does not concur with the recommended disposition, the Clerk of the Supreme Court of Appeals shall promptly establish a briefing schedule and notify the parties of the date and time of oral argument or submission of the case without oral argument before the Supreme Court of Appeals.

2009.[3] James L. alleged in his complaint that Mr. Hussell violated the rules by engaging in a sexual relationship with Carolyn L. This sexual relationship began in March 2010 and ended in May 2010 after Carolyn L. terminated their relationship. James L. also alleged that prior to the beginning of their sexual relationship, Mr. Hussell and Carolyn L. engaged in frequent telephone conversations and were once found together at 5:30 a.m. in a remote area of Greenbrier County by Mr. Hussell's wife, all of which bothered James L. James L. further alleged that after he and his wife separated in January of 2010, Mr. Hussell gave legal advice to Carolyn L. that resulted in James having to pay more money to purchase her interest in jointly-held marital real estate.

A statement of charges was issued against Mr. Hussell on May 13, 2013. The statement of charges alleged that Mr. Hussell violated Rule 8.4(g) of the Rules of Professional Conduct, by engaging in sexual relations with Carolyn, a client, during the course of that representation. Mr. Hussell was also charged with violating Rule 1.7(a) of the Rules by providing independent legal advice concerning marital property and spousal support issues to Carolyn, which advice adversely affected James L.'s interests by increasing the amount of money he had to pay to purchase Carolyn's share of marital property. Finally, Mr. Hussell was also accused of violating Rule 1.7(b) by engaging in sexual relations with Carolyn at the same time he jointly represented her and James L.,

---

[3] At the same time that James and Carolyn were planning their estate, other members of their extended family were using Mr. Hussell's services for the same purpose. James' father bore the costs of Mr. Hussell's services.

3

creating an impermissible conflict between Mr. Hussell's personal interests and his clients' interests. Mr. Hussell contested the allegations of wrongdoing in James L.'s complaint. Further, he denied that he represented either James L. or his wife during the time of the sexual relationship between himself and Carolyn L.

This matter was heard by the HPS on October 29, 2013. It is uncontested by Mr. Hussell that he and Carolyn engaged in a two-month-long sexual relationship from March 2010 to May 2010 that started after James and Carolyn L. separated and before a divorce action was filed in the State of Virginia.[4] It is also uncontested that both James and Carolyn L. retained separate counsel in the State of Virginia to represent them in these divorce proceedings.[5]

In finding that Mr. Hussell was Carolyn's attorney at the time of their sexual relationship, the HPS found that Mr. Hussell's conduct violated Rule 8.4(g), which states that it is professional misconduct for a lawyer to

> have sexual relations with a client whom the lawyer personally represents during the legal representation unless a consensual sexual relationship existed between them at the commencement of the lawyer/client relationship. For

---

[4] This relationship was terminated by Carolyn L., ostensibly via a text message.

[5] James and Carolyn L were divorced in 2010. While they have not remarried, they resumed a relationship post-divorce and consider themselves reconciled as of the time of the hearing.

4

purposes of this rule, "sexual relations" means sexual intercourse or any touching of the sexual or other intimate parts of a client or causing such client to touch the sexual or other intimate parts of the lawyer for the purpose of arousing or gratifying the sexual desire of either party or as a means of abuse.

The HPS determined that, beginning in September of 2009, Mr. Hussell was jointly engaged by the L. family for the purpose of drafting and implementing a comprehensive estate plan. Prior to this time James and Carolyn L. and Mr. Hussell and his wife were acquainted and friendly with each other. During the time of the joint representation, in late 2009, James and Carolyn were experiencing marital problems. They separated in or near December of 2009.

James L. testified before the HPS that after he and Carolyn L. separated, in or near December of 2009, he and Mr. Hussell discussed the particulars of his further representation of James and Carolyn L. in their unfinished estate plan. James L. testified that Mr. Hussell suggested that he could represent both James L. and Carolyn L., but would keep any information garnered from either one from the other spouse. On January 6, 2010, Mr. Hussell mailed a letter to James L. and Carolyn L. in which he stated that he could represent both James and Carolyn and that he could keep their information separate and confidential from the other spouse, if that is what they wanted.

Four days later, on January 10, 2010, Mr. Hussell and James L. were both at the Greenbrier Resort, when James indicated that he wanted to talk to Mr. Hussell

5

privately. James L. and Mr. Hussell both testified that during this exchange, James fired Mr. Hussell from his joint representation because of his concerns over the nature of his relationship with his estranged wife. Both testified that James L. stated that he had engaged the services of a trust officer to find another attorney to separately prepare James's estate documents. After this conversation took place, Carolyn L. also acknowledged to Mr. Hussell that he had been fired.

In testimony before the HPS, Carolyn L. acknowledged that sometime after January 10, 2010, she and Mr. Hussell discussed James L.'s termination of the joint representation. Carolyn L. knew that this conversation took place about the time that James L. moved out of the marital residence. She testified that James L. told her that he was not comfortable with Mr. Hussell representing him because of the friendship between Mr. Hussell and Carolyn L. While Carolyn L. could not recall whether the termination discussion took place in Lewisburg (at the site of their cabins) or at the Greenbrier, she acknowledged that she and Mr. Hussell discussed the event in at least one telephone conversation after January 10, 2010. Carolyn L. testified that she explained to Mr. Hussell her understanding that James L. had terminated the joint representation, because James L. was not comfortable with the amount of time she and Mr. Hussell were spending together. Four days after this termination of Mr. Hussell, on January 14, 2010, James and Carolyn L. signed the January 6, 2010, letter prepared by Mr. Hussell regarding the confidentiality of the information provided to Mr. Hussell and sent it to him. This letter was received by Mr. Hussell's office on or about January 22, 2010, and

was placed in James' and Carolyn L.'s file. Nothing thereafter was done pursuant to the letter.

Mr. Hussell testified that he performed no further legal services for James and Carolyn L. after his termination on January 10, 2010. This was not refuted by James or Carolyn L., or by anything in the record. Billing records disclosed that Mr. Hussell performed a total of two and a half hours of work on their behalf, *all prior* to January 10, 2010. James L. ultimately used a Virginia attorney to prepare his estate plan. Mr. Hussell did not send a disengagement letter to James and Carolyn L.[6]

In her testimony, Carolyn L. stated that she never felt that there was an attorney-client relationship between herself and Mr. Hussell. She stated that the planning of her and James L.'s estate was primarily the work of James L. and his family,[7] and that she took no part in any of the financial decisions in respect to the estate. Carolyn L. stated that "because of the fact that [Mr. Hussell] and I had become friends, I didn't really think of him as an attorney. I just thought of him as my friend."

---

[6] The Court observes that the better practice in matters where an attorney-client relationship is terminated is to send such a letter that makes it clear that any obligations or responsibilities for further representation by the attorney are terminated.

[7] James L. testified that his extended family's business holdings and investments were intertwined. Therefore, having one attorney prepare the entire family's estate plan was advantageous. James L. stated that his father was going to pay Mr. Hussell's fees for the entire family's estate planning.

In terms of Mr. Hussell's providing legal advice to Carolyn at the expense of James L.'s interests, the HPS found that Mr. Hussell discussed an alimony formula with Carolyn L. during the course of their sexual relationship. In addition, the HPS found that Mr. Hussell's suggestion that Carolyn L. obtain an independent appraisal of the marital property in Greenbrier County constituted legal advice that acted to the detriment of his client James. The HPS concluded that as a result of Carolyn L.'s obtaining an independent appraisal, the value of the jointly-held property was higher, which resulted in James L. having to pay more to purchase Carolyn's interests in that property. None of this "advice" related to confidential information conveyed to Mr. Hussell prior to January 10, 2010.

On April 17, 2014, the HPS issued its decision in this matter, concluding that Mr. Hussell violated three provisions of the Rules. The HPS found that Mr. Hussell engaged in a sexual relationship with a client, in violation of Rule 8.4(g). The HPS further found that by giving Carolyn L. legal advice regarding her pending divorce proceedings against James L. at a time when they were jointly represented by Mr. Hussell, he had a conflict of interest and violated Rule 1.7 of the Rules. Finally, because Mr. Hussell had contested the existence of an attorney-client relationship between himself and James and Carolyn L., the HPS found that Mr. Hussell knowingly made a false statement of material fact in the course of a disciplinary proceeding in violation of

8

Rule 8.1, as well as violating Rule 8.4(c) by engaging in conduct that involves dishonesty, fraud, deceit or misrepresentation.

The HPS recommended that Mr. Hussell's law license be suspended for a period of 90 days, that Mr. Hussell be automatically reinstated to the practice of law without further proceedings, that Mr. Hussell's practice be supervised for a period of one year after reinstatement, that Mr. Hussell undergo a psychiatric evaluation, and that Mr. Hussell bear the costs of this proceeding. Mr. Hussell and ODC agreed to the sanctions recommended by the HPS. This Court did not agree with the recommended disposition and implemented a briefing schedule.

## II. STANDARD OF REVIEW

In lawyer disciplinary proceedings, this Court reviews *de novo* the recommended decision of the Lawyer Disciplinary Board's HPS:

> A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Comm. on Legal Ethics of the W. Va. State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994). This review is deferential to the HPS's conclusions. "Absent a

9

showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the State Bar Legal Ethics Committee. . . are to be given substantial consideration." Syl. pt. 3, in part, *In re Brown*, 166 W. Va. 226, 273 S.E.2d 567 (1980).

This Court is responsible for determining the ultimate resolution of lawyer disciplinary proceedings. As such, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Comm. on Legal Ethics of The W. Va. State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984). The appropriate sanction is likewise the responsibility of this Court, with three distinct goals in mind: punishment, deterrence and maintenance of the public's trust and confidence in the lawyers that serve this State. *See Lawyer Disciplinary Bd. v. Stanton*, 225 W. Va. 671, 676, 695 S.E.2d 901, 906 (2010).

With these standards in mind, we now proceed to consider the HPS's recommended decision and the parties' contentions.

## III. ANALYSIS

As a threshold issue, in order to sustain the findings and conclusions of the HPS, there must have existed at the time of the charged violations an attorney-client relationship between Mr. Hussell, James and Carolyn. If, as Mr. Hussell argued below and upon appeal, there was not an attorney-client relationship at certain relevant times,

the charges cannot be sustained. On the contrary, if the joint representation continued past January 10, 2010, the charges would be sustained.

It is uncontroverted that Mr. Hussell was jointly representing James and Carolyn L. in estate planning matters from approximately September 12, 2009, to at least January 10, 2010. The question before us is whether that representation continued after January 10, 2010, and on to the time period when Mr. Hussell and Carolyn L. first began their sexual relationship and when it is alleged that Mr. Hussell improperly gave Carolyn L. legal advice against the interests of James L. As noted herein, although Mr. Hussell admits to a sexual relationship with Carolyn L., he denies that he gave any improper legal advice to Carolyn regarding her divorce proceedings and that he encouraged her to speak with her Virginia attorney on matters involving her divorce.

The HPS found that the letter signed by James and Carolyn on January 14, 2010, established that an attorney-client relationship existed between Mr. Hussell and James on that date. As to the issue of an attorney-client relationship, this Court finds more compelling the termination of joint representation by James L. when he spoke with Mr. Hussell on January 10, 2010, and the fact that after January 10, 2010: Mr. Hussell performed no work for James and Carolyn L.; neither James nor Carolyn L. sought Mr. Hussell to perform work on their behalf, having each hired their own counsel in Virginia; and Mr. Hussell did nothing to signify his acceptance of new representation from the

11

January 14, 2010, letter from James and Carolyn L. after the January 10, 2010, termination by James L. of his joint representation.

Long ago this Court established that the attorney-client relationship is a matter of contract, express or implied. In syllabus point 1 of *Keenan v. Scott*, 64 W. Va. 137, 61 S.E. 806 (1908), this Court stated that an attorney-client relationship begins

> [a]s soon as the client has expressed a desire to employ an attorney and there has been a corresponding consent on the part of the attorney to act for him in a professional capacity, the relation of attorney and client has been established; and all dealings thereafter between them relating to the subject of the employment will be governed by the rules applicable to such relation.

In *Committee on Legal Ethics of the West Virginia State Bar v. Simmons*, 184 W.Va. 183, 399 S.E.2d 894 (1990), the attorney, Mr. Simmons, argued that there was no attorney-client privilege at the time he became involved in a financial transaction with two persons who were his clients. The specific charges against Mr. Simmons were that he entered into business transactions with long-time clients without making adequate disclosures to them, without providing adequate security or other legal means to protect their interests, and without referring them to independent counsel.

In *Simmons*, this Court concurred with other courts which have held that "an attorney-client relationship may be implied from the conduct of the parties" (citations omitted) and stated that the Court must "look to the specific facts and circumstances of

12

each case to determine whether an attorney-client relationship exists." *Id.,* at 186, 399 S.E.2d at 897.

Examining the specific facts and circumstances of this case, along with the conduct of Mr. Hussell, James L. and Carolyn L., we agree with the HPS's finding that there jointly existed an attorney-client relationship between Mr. Hussell, James and Carolyn L. prior to January 10, 2010. This relationship was clearly established by correspondence, the parties' recollections and statements, and the preliminary work performed by Mr. Hussell on behalf of his clients.

When James and Carolyn L. separated, James L. contacted Mr. Hussell to get assurance that information he might give Mr. Hussell would not be relayed to his estranged wife, Carolyn L. Mr. Hussell wrote a letter to James and Carolyn L. dated January 6, 2010, to acknowledge the changed circumstances and to attempt to confirm for James L. the privacy of the information he might give to Mr. Hussell. However, prior to this letter being signed and returned to Mr. Hussell on January 14, 2010, the intervening conversation between James L. and Mr. Hussell took place on January 10, 2010, during which James L. definitely ended the joint attorney-client relationship. Carolyn L.'s testimony confirms this termination of representation, as does Mr. Hussell's. In keeping with the termination, Mr. Hussell thereafter took no further legal action on behalf of James and Carolyn L. and billed for no further time. Equally important, there is no indication that either James or Carolyn L. undertook any action, such as contacting Mr.

Hussell to discuss the progress of their estate plan or to indicate that they believed the joint representation continued past its ostensible termination on January 10, 2010. We find it reasonable that Mr. Hussell understood the January 10, 2010, conversation for what it was — a termination of joint representation and that he reasonably believed that he was no longer counsel for James and Carolyn L.

The HPS's conclusion that the January 14, 2010, unilateral act of James and Carolyn L. in returning the January 6, 2010, representation letter after the discharge of Mr. Hussell re-established an attorney-client relationship is simply unsupported by reliable, probative, and substantial evidence on the whole record. Neither Mr. Hussell nor James and Carolyn L. did anything to signify a belief that representation had been re-established. Indeed, we observe that James and Carolyn L. engaged separate counsel in Virginia for their divorce. Based upon the totality of circumstances, we find that there was no attorney-client relationship between Mr. Hussell and James and Carolyn L. after January 10, 2010. Consequently, any sexual relationship between Mr. Hussell and Carolyn L. past that date could not violate Rule 8.4(g) of the Rules.[8] Furthermore, because there was no attorney-client relationship between himself and either James or Carolyn L., Mr. Hussell did not violate Rule 1.7 of the Rules by giving legal advice that adversely affected the interests of another client. Finally, we find that Mr. Hussell did

---

[8] Our inquiry is limited to the disciplinary issues before us. We do not consider the propriety, or lack thereof, of the relationship between Mr. Hussell and Carolyn L. outside of the context of the issues before us.

14

not knowingly make a false statement of material fact during the course of these disciplinary proceedings, in violation of Rule 8.1.  Mr. Hussell's statements consistently challenged the existence of an attorney-client relationship between himself and James and Carolyn L. after January 10, 2010.

## IV.  CONCLUSION

For the foregoing reason, we dismiss the Statement of Charges against Mr. Hussell.

Statement of Charges Dismissed.

15