430 S.E.2d 320

**The COMMITTEE ON LEGAL ETHICS OF THE WEST VIRGINIA STATE BAR, Complainant,**

**v.**

**Joseph C. COMETTI, a Member of The West Virginia State Bar, Respondent.**

**No. 21506.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 2, 1993.

Decided March 30, 1993.

Sherri D. Goodman, The West Virginia State Bar, Charleston, for complainant.

Michael C. Allen, Charleston, for respondent.

MILLER, Justice:

In this proceeding, the Committee on Legal Ethics of the West Virginia State Bar (Committee) asks this Court to discipline Joseph C. Cometti, a member of the bar practicing in Kanawha County. The Committee seeks to suspend Mr. Cometti's license to practice law for a period of two years and to make his reinstatement conditional upon one year of supervised practice following his suspension. The Committee recommends this penalty based upon its finding that Mr. Cometti violated several ethical rules in the handling of legal matters for three clients: Catherine Shrewsbury, Theresa Cochran, and Beverly Middleton.

■ Our standard for evaluating recommendations of the Committee regarding the suspension of an attorney for ethical violations is stated in Syllabus Point 1 of *Committee on Legal Ethics v. Lewis,* 156 W.Va. 809, 197 S.E.2d 312 (1973):

"In a court proceeding prosecuted by the Committee on Legal Ethics of the West Virginia State Bar for the purpose of having suspended the license of an attorney to practice law for a designated period of time, the burden is on the Committee to prove by full, preponderating and clear evidence the charges contained in the complaint filed on behalf of the Committee."

*See also Committee on Legal Ethics v. Keenan,* 189 W.Va. 37, 427 S.E.2d 471 (1993); *Committee on Legal Ethics v. Charonis,* 184 W.Va. 268, 400 S.E.2d 276 (1990). Although we agree that Mr. Cometti has violated certain ethical rules, we find that not all of the charges made by the Committee are supported by the evidence, and that the recommended sanction is excessive.

## I.

### THE SHREWSBURY MATTER

In 1986, Mr. Cometti was engaged by Catherine Shrewsbury to represent her in a civil action against the manufacturer of a faulty solar powered heating system she had installed in her home. Mr. Cometti was also engaged by approximately eighty other clients who had purchased solar powered heating systems from the same manufacturer. During the course of the heating system litigation, Ms. Shrewsbury took a very active interest in her case and apparently spent a great deal of time with Mr. Cometti.

In the course of their discussions concerning the heating system litigation, Ms. Shrewsbury related to Mr. Cometti that she was experiencing personal financial difficulties. Among other problems, she was unable to pay the mortgage on a parcel of property she had purchased several years earlier.[1] Because Mr. Cometti was looking for a place to live, they began discussing the possibility of a sale of the property to Mr. Cometti.

After several months of negotiations, Mr. Cometti and Ms. Shrewsbury entered into a lease/purchase agreement in March

---

1. Ms. Shrewsbury was not living on this property and had apparently purchased it as an invest- ment.

of 1988. The agreement is described by the Committee as follows:

"The Agreement is a complex real estate transaction involving the extension of the right to purchase property contingent upon certain events occurring and the continued right to lease the property under other conditions, together with the application of lease payments to the purchase price. Any lawyer reviewing the agreement must come to the conclusion that at the very least, there is a potential for disagreement as to its terms and conditions resulting in an adverse relationship between buyer/tenant and seller/landlord." [2]

Rather than make lease payments to Ms. Shrewsbury, Mr. Cometti made payments directly to her mortgagor, thereby covering Ms. Shrewsbury's mortgage payment obligations. Although Mr. Cometti appears to have made regular mortgage payments on the property, neither he nor Ms. Shrewsbury paid the arrearage owed to the mortgagor and accumulated by Ms. Shrewsbury.[3] The mortgagor threatened a foreclosure proceeding to Mr. Cometti in the summer of 1989. Simultaneously, Ms. Shrewsbury and Mr. Cometti began to differ on the strategy to be used in the heating system cases. When Ms. Shrewsbury became aware of the foreclosure possibility, she immediately paid the arrearage to the mortgagor and subsequently locked Mr. Cometti out of the property without any notice to him. Mr. Cometti was, therefore, unable to retrieve his belongings. Shortly thereafter, Mr. Cometti filed suit against Ms. Shrewsbury to regain his belongings.

### A.

The Committee contends that Mr. Cometti violated DR 5–104(A) by entering into the lease/purchase agreement without making adequate disclosure to Ms. Shrewsbury and without affording her an opportunity to retain independent counsel to protect her interests. DR 5–104(A) states: "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure." Its present counterpart is found in Rule 1.8(a) of the Rules of Professional Conduct.[4]

The Committee accepted Mr. Cometti's assertion that he did not intend to harm or take advantage of Ms. Shrewsbury through the lease/purchase agreement and that, in fact, he was trying to aid her and relieve her financial difficulties. The Committee also found, however, that the parties had differing interests in the lease/purchase agreement and that Mr. Cometti had made no effort to advise Ms. Shrewsbury to obtain independent counsel to represent her separate interests.

---

2. The lease/purchase agreement provided that Mr. Cometti would make monthly lease payments to Ms. Shrewsbury for six months. At that time, he would have an option to either purchase the property or continue leasing the property on a month-to-month basis. A dispute between Mr. Cometti and Ms. Shrewsbury arose over the amount of arrearage owed by Ms. Shrewsbury to her mortgagor, and whether Mr. Cometti or Ms. Shrewsbury had agreed to pay the arrearage. Disputes also arose over who was liable for back and future taxes on the property and for certain maintenance fees.

3. Ms. Shrewsbury owed several thousand dollars to her mortgagor at the time she entered into the lease/purchase agreement with Mr. Cometti.

4. This ethical violation occurred prior to January 1, 1989, the effective date of our current Rules of Professional Conduct. This portion of the case was processed under our Code of Professional Responsibility as promulgated on June 9, 1970, and as amended on October 31, 1977, and October 18, 1978. The current provision is found in Rule 1.8(a), which states:

"A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

"(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

"(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

"(3) the client consents in writing thereto."

Mr. Cometti argues that Ms. Shrewsbury was not looking to him to protect her interests, and that she actively negotiated the lease/purchase agreement with him. We disagree. Although Ms. Shrewsbury did negotiate with Mr. Cometti, it is obvious from the record that she relied upon his professional judgment to draw up an agreement that best represented both of their interests. By his own admission, rather than research the deed of trust entered into by Ms. Shrewsbury pursuant to her mortgage on the property, Mr. Cometti simply accepted her recollections. In fact, he did no research whatsoever, and the "negotiations" consisted mainly of Mr. Cometti convincing Ms. Shrewsbury to lower the purchase price under his option to purchase.

This case bears some analogy to *Committee on Legal Ethics v. Simmons*, 184 W.Va. 183, 399 S.E.2d 894 (1990), where the attorney purchased his client's farm. We found that the attorney "entered into business transactions with long-time clients without making adequate disclosure to them, without properly protecting their interests, and without referring them to independent counsel." 184 W.Va. at 186–87, 399 S.E.2d at 897–98. In consequence, we found a violation of DR 5–104(A) prohibition against an attorney entering into a business relationship with a client.

■ Most courts hold that the prohibition against an attorney entering into a transaction with his client is designed to preclude the attorney from acquiring an interest adverse to the client, which would violate the fiduciary duty owed by an attorney toward a client. *See, e.g., Matter of Weiner*, 120 Ariz. 349, 586 P.2d 194 (1978); *People v. Vernon*, 660 P.2d 879 (Colo.1982); *The Florida Bar v. Bern*, 425 So.2d 526 (Fla.1982); *Matter of Schaumann*, 243 Ga. 138, 252 S.E.2d 627 (1979); *Committee on Professional Ethics & Conduct v. Mershon*, 316 N.W.2d 895 (Iowa 1982); *In the Matter of Singzer*, 108 N.J. 47, 527 A.2d 857 (1987); *In re Gant*, 293 Or. 130, 645 P.2d 23, *w'drawn in part on other grounds, reh'g denied* 293 Or. 359, 647 P.2d 933 (1982). We expressed much the

same point in Syllabus Point 2 of *Rodgers v. Rodgers*, 184 W.Va. 82, 399 S.E.2d 664 (1990):

> " 'The relationship of attorney-at-law and client is of the highest fiduciary nature, calling for the utmost good faith and diligence on the part of such attorney.' Syllabus Point 4, *Bank of Mill Creek v. Elk Horn Coal Corp.*, 133 W.Va. 639, 57 S.E.2d 736 (1950)."

■ In order to avoid violating the ethical prohibition of having an adverse interest with a client, it is incumbent upon the attorney to fully disclose the nature of his interest to the client, including its possible adverse effect on the client. The client should also be given an opportunity to seek independent advice. Finally, the client must then consent to the attorney's participation in such adverse interest. *E.g., People v. Vernon, supra; In re James*, 452 A.2d 163 (D.C.1982), *cert. denied*, 460 U.S. 1038, 103 S.Ct. 1429, 75 L.Ed.2d 789 (1983); *The Florida Bar v. Bern, supra; In re Schaumann, supra; In re Gant, supra.*

Accordingly, we find that Mr. Cometti violated DR 5–104(A) by failing to make adequate disclosure, and by failing to advise Ms. Shrewsbury to obtain independent counsel to represent her interests in the negotiations.

### B.

■ The Committee also asserts that Mr. Cometti violated Rule 1.7(b) of the Rules of Professional Conduct when he filed suit in July of 1989 against Ms. Shrewsbury to retrieve his belongings after Ms. Shrewsbury locked him out of the property. Rule 1.7(b) states:

> "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation[.]" [5]

---

**5.** The current Rules of Professional Conduct were in effect on July 31, 1989. *See* note 4,

Mr. Cometti contends that he had been discharged from his representation of Ms. Shrewsbury at the time he filed the civil action. Although the facts surrounding Mr. Cometti's withdrawal as Ms. Shrewsbury's attorney in the heating system case are convoluted, it is clear that both parties had engaged in, at the least, very heated discussions concerning his withdrawal. We are persuaded that Mr. Cometti had withdrawn at the time he filed suit by the testimony of L. Alvin Hunt, a lawyer sought out by Ms. Shrewsbury to take over her heating system case. Mr. Hunt testified to the Committee that several days prior to the institution of Mr. Cometti's suit against Ms. Shrewsbury, she sought his services and told him that Mr. Cometti was no longer her attorney. Because Mr. Cometti no longer represented Ms. Shrewsbury at the time he instituted the suit to gain access to the property to obtain his possessions, we find that Mr. Cometti did not violate Rule 1.7(b).

### C.

The Committee also found that Mr. Cometti had violated Rule 8.1(b) of the Rules of Professional Conduct when he repeatedly failed to respond to requests for information pursuant to the ethics complaints filed against him. These requests were made through the mail by the Committee's assistant disciplinary counsel on August 14, 1989, and September 6 and 27, 1989. Rule 8.1(b), in part, states: "[A] lawyer ... in connection with a disciplinary matter, shall not: (b) ... knowingly fail to respond to a lawful demand for information from ... [a] disciplinary authority[.]" Mr. Cometti argues that, at the time the Committee's counsel requested information from him, he did not believe such requests were "lawful demands." He contends that he responded fully once the Committee's counsel served him with a subpoena. However, this subpoena was not issued until October 26, 1989.

■ In Syllabus Point 1 of *Committee on Legal Ethics v. Martin,* 187 W.Va. 340, 419 S.E.2d 4 (1992), we stated:

"An attorney violates West Virginia Rule of Professional Conduct 8.1(b) by failing to respond to requests of the West Virginia State Bar concerning allegations in a disciplinary complaint. Such a violation is not contingent upon the issuance of a subpoena for the attorney, but can result from the mere failure to respond to a request for information by the Bar in connection with an investigation of an ethics complaint." [6]

We find that Mr. Cometti violated Rule 8.1(b) when he failed to respond to the Committee's counsel's request for information.

### II.

### THE COCHRAN MATTER

In 1989, Theresa Cochran engaged Mr. Cometti to represent her in a case concerning allegations of student loan improprieties against a college she had attended. Mrs. Cochran presented Mr. Cometti with handwritten documents prepared by college officials and apparently detrimental to the college's case. Mr. Cometti placed those documents in a file concerning Mrs. Cochran's case in his office.

Mrs. Cochran then sought the return of her file through letters and telephone calls to Mr. Cometti beginning in October, 1989, so that she could obtain another lawyer to represent her. Mrs. Cochran sent several certified letters to Mr. Cometti and left several phone messages for him requesting the return of her file in November, 1989. Mrs. Cochran then contacted the Committee and filed an ethics complaint. A copy of the complaint was sent by the assistant disciplinary counsel to Mr. Cometti on December 3, 1989. Assistant disciplinary

---

*supra.*

**6.** We went on to state in Syllabus Point 2 of *Martin:*

"In order to expedite the investigation of an ethics complaint by the Bar, an attorney's failure to respond to a request for information concerning allegations of ethical violations within a reasonable time will constitute an admission to those allegations for the purposes of the disciplinary proceeding."

counsel then sent Mr. Cometti a letter in both January and February, 1990, which threatened him with disciplinary action for not returning Mrs. Cochran's file. Mr. Cometti did not respond until April of 1990 when he turned the papers over to Mrs. Cochran.

The Committee contends that Mr. Cometti violated Rule 1.16(d) of the Rules of Professional Conduct when he failed to timely surrender Mrs. Cochran's file upon her request that he do so. Rule 1.16(d) states:

"Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

█ Initially, it is important to recognize that Rule 1.16(a)(3) allows a client to discharge an attorney.[7] A client may discharge an attorney in a civil case at any time with or without cause, as stated in the official comment to Rule 1.16: "A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." The official comment is a distillation of the common law rule with regard to the attorney-client relationship. We have recognized this in *Boyle v. Beltzhoover*, 119 W.Va. 626, 641, 196 S.E. 503, 510 (1938), where we stated that " 'the client may end [the relationship] at any time, without notice, and without showing any cause therefor.' 3 American and Eng. Ency. of Law 327–28 (2d Ed.), 327–8." The New York Court of Appeals expressed the matter in this fashion in *Demov, Morris, Levin &*

*Shein v. Glantz*, 53 N.Y.2d 553, 556–57, 444 N.Y.S.2d 55, 57, 428 N.E.2d 387, 389 (1981), and we agree:

"[A] client may at anytime, with or without cause, discharge an attorney in spite of a particularized retainer agreement between the parties.... Moreover, we have held that since the client has the absolute right of public policy grounds to terminate the attorney-client relationship at any time without cause, it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract, and the attorney discharged without cause is limited to recovering in *quantum meruit* the reasonable value of services rendered." (Citations omitted).[8]

*See also Novinger v. E.I. duPont De NeMours & Co., Inc.*, 809 F.2d 212 (3rd Cir.), *cert. denied sub nom. Novinger v. Kramer*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *Annas v. State*, 726 P.2d 552 (Alaska App.1986); *The Florida Bar v. Grusmark*, 544 So.2d 188 (Fla.1989); *Belli v. Shaw*, 98 Wash.2d 569, 657 P.2d 315 (1983). *See generally* 7 Am.Jur.2d *Attorney–at–Law* § 168 (1980).

█ Once the relationship is terminated, Rule 1.16(d) comes into play and the attorney is required to promptly return the client's papers and documents. In the present case, there is sufficient evidence that the file was not returned, as requested, upon termination of the attorney-client relationship; thus, we find that Mr. Cometti violated Rule 1.16(d).

### III.

### THE MIDDLETON MATTER

In 1988, Beverly Middleton engaged Mr. Cometti to represent her in an appeal of a denial of unemployment compensation ben-

---

7. Rule 1.16(a)(3) states: "Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: * * * (3) the lawyer is discharged."

8. We need not for purposes of this opinion consider the possible variations to this rule,

such as the rule in court-appointed criminal cases where there is a termination of the attorney-client relationship or the issue of court approval of the termination of the attorney where a civil case is in litigation. *See Cardot v. Luff*, 164 W.Va. 307, 262 S.E.2d 889 (1980).

efits. Mr. Cometti failed to file the appeal. Mr. Cometti did not return Ms. Middleton's telephone calls concerning the status of her appeal. She only learned of Mr. Cometti's failure to file her appeal by telephoning the Bureau of Employment Security.

Mr. Cometti later acknowledged his failure to file the appeal. He then offered to pay Ms. Middleton the benefits she would have received had her appeal been successful, if, in return, Ms. Middleton would agree not to sue Mr. Cometti for malpractice. Ms. Middleton agreed to this offer. The agreement was dated August 14, 1989, and called for eight monthly payments of $234.[9] After Mr. Cometti failed to make regular monthly payments, Ms. Middleton instituted this ethics complaint against him, and only then did he pay the back payments he owed her.

■ The Committee found that Mr. Cometti had violated Rule 1.8(h) of the Rules of Professional Conduct because he failed to advise Ms. Middleton that she should retain independent representation in connection with her agreement not to sue him for malpractice. Rule 1.8(h) states:

> "A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith."

Rule 1.8(h) is designed to cover two situations. The first is where a lawyer accepts representation of a client, but conditions such representation upon the client's prospectively releasing the attorney from any potential claim for malpractice in the handling of the case. The second situation is where the attorney, in his representation of the client, commits malpractice and then seeks to settle the matter and obtain a release from the client who is unrepresented.

■ Ordinarily, an attorney may not seek exoneration from potential malpractice claims in the absence of some statutory provision. *E.g., The Florida State Bar v. Cohen,* 331 So.2d 306 (Fla.1976); *In re Cissna,* 444 N.E.2d 851 (Ind.1983); *In re Tallon,* 86 A.D.2d 897, 447 N.Y.S.2d 50 (1982). *See generally* Annot., 14 A.L.R.4th 209 (1982). Under W.Va.Code, 30–2–11 (1923), a waiver of prospective malpractice would not be proper in this jurisdiction.[10]

■ In the situation where an attorney has committed malpractice and then wishes to have the client release him from liability, Rule 1.8(h) of the Rules of Professional Conduct requires that the attorney advise the client in writing that consultation with an independent attorney should be undertaken. *See, e.g., The Florida Bar v. Nemec,* 390 So.2d 1190 (Fla.1980); *In re Tallon, supra; State v. Tadych,* 69 Wis.2d 77, 230 N.W.2d 162 (1975). Here, Mr. Cometti admits that he never advised Ms. Middleton to seek outside counsel before signing the agreement.

Prior to the adoption of Rule 1.8(h), a similar provision was found in DR 6–102(A) of the Code of Professional Responsibility,[11] which we considered in *Committee on Legal Ethics v. Hazlett,* 179 W.Va. 303, 367 S.E.2d 772 (1988). There, the attorney refused to turn over the clients' files unless they signed a release from any and all liability of any kind. We found the attorney's conduct unethical.

In this case, the malpractice had already been committed by virtue of Mr. Cometti's failure to file a timely appeal. His direct negotiation of the agreement with his client

---

**9.** The agreement also provided for Mr. Cometti to indemnify Ms. Middleton if the Department of Employment Security sued Ms. Middleton for benefits previously received. Only then would Mr. Cometti be obligated to pay any money.

**10.** W.Va.Code, 30–2–11, states: "Every attorney-at-law shall be liable to his client for any dam-

ages sustained by the client by the neglect of his duty as such attorney."

**11.** DR 6–102(A) provides: "A lawyer shall not attempt to exonerate himself or limit his liability to his client for his personal malpractice."

without the intervention of independent counsel violates Rule 1.8(h). This rule forbids an attorney from making an agreement with a present or former client to settle a claim that such client has against the attorney, without first advising such client in writing that independent counsel should be consulted. It is not disputed that Rule 1.8(h) was not complied with by Mr. Cometti.

## IV.

### DISCIPLINARY SANCTIONS

In considering the ethical violations of Mr. Cometti, the disciplinary rules cited herein are merely the minimum guidelines we use to judge attorney conduct. As we stated in Syllabus Point 3 of *Committee on Legal Ethics v. Tatterson*, 173 W.Va. 613, 319 S.E.2d 381 (1984):

"The Disciplinary Rules of the [Rules of Professional Conduct] state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action."

*See also* Syllabus Point 1, *Committee on Legal Ethics v. Farber, supra.* Furthermore, in Syllabus Point 1 of *Charonis, supra*, we stated:

" 'This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.' Syllabus Point 3, *Committee on Legal Ethics v. Blair*, [174] W.Va. [494], 327 S.E.2d 671 (1984)."

In this case, we have found the respondent guilty of four ethical violations. Certainly, the most serious charge is the Shrewsbury matter where a violation of DR 5–104(A) has been found in respondent's business transaction with his client. In *Committee on Legal Ethics v. Simmons, supra*, we imposed a six-month suspension upon finding a violation of DR 5–

104(A). In *Simmons*, we did not analyze the harm done to the client, which has been an important factor considered by other courts in evaluating such a disciplinary violation. *See generally* Annot., 35 A.L.R.3d 674 (1971).

Here, although Ms. Shrewsbury did not lose her real estate, she was required to pay sums that she felt she did not owe. As we pointed out earlier, the agreement drawn up by Mr. Cometti created much of these problems, which ultimately accrued to his benefit because he had only a minimum lease interest. Thus, the failure to pay taxes and the back mortgage payments would cause a forfeiture resulting in Ms. Shrewsbury losing the property. We find a six-month suspension is warranted.

A second serious violation involved the respondent's *ex parte* settlement of Ms. Middleton's malpractice claim against him in disregard of Rule 1.8(h). We have not had occasion to consider the proper sanction for this type of ethical violation. Other jurisdictions have determined this question by weighing the severity of the malpractice as contrasted with the settlement reached. Penalties range from a public reprimand to disbarment. *See generally* Annot., 14 A.L.R.4th 209 (1982).

Here, the malpractice claim resulted in the loss of Ms. Middleton's unemployment compensation benefits. Although Mr. Cometti agreed to pay her an amount equal to the lost benefits, the client was not made completely whole. She was still exposed to a potential repayment obligation.[12] We consider any breach of Rule 1.8(h) to be serious and conclude that a six-month suspension is warranted for this violation.

The final two ethical violations involve similar patterns. The first was a violation of Rule 1.16 which requires an attorney to relinquish a client's file to the client when the attorney-client relationship

---

12. As previously noted, the indemnity agreement prepared by Mr. Cometti reimbursed Ms. Middleton for lost benefits by reason of his failure to appeal. The unemployment compensation benefits previously paid to Ms. Middleton were required to be repaid because the failure to appeal caused affirmance of the order holding the claim invalid. The indemnity agreement provided that if Ms. Middleton was actually required to repay this money, Mr. Cometti would reimburse her.

is ended. The second violation was of Rule 8.1(b), which requires an attorney to respond to requests for information from the disciplinary authority.

In Ms. Cochran's case, the record demonstrates that she made a number of requests to Mr. Cometti for the return of her file. She also enlisted the aid of the Committee, which sent correspondence and notice of an ethical charge to Mr. Cometti. Six months elapsed before the file was turned over to Ms. Cochran. No justification was offered for this delay. We have not had occasion to discuss the appropriate penalty for this type of violation. In view of the inordinate delay without justification, we believe a two-month suspension is warranted for this violation of Rule 1.16.

■ With regard to Mr. Cometti's failure to respond to ethical inquiries by the Committee, this action violated Rule 8.1(b). As we have earlier pointed out in *Committee on Legal Ethics v. Martin, supra,* we outlined the substantive law on a Rule 8.1(b) violation. It is obvious that in *Martin* we treated a violation of Rule 8.1(b) as a separate disciplinary violation from the underlying ethical complaint being pursued by the Committee. This is also the majority view elsewhere. *See* Annot., 37 A.L.R.4th 646 (1985). Again, we find his delay in responding to be substantial and

unjustified. This violation warrants a one-month suspension.

We note that under the previous ethical rules embodied in the former Code of Professional Responsibility, no provision equivalent to Rule 8.1(b) existed. Consequently, in *Committee on Legal Ethics v. Mullins,* 159 W.Va. 647, 226 S.E.2d 427 (1976), where we were faced with this question, we determined that in the absence of any ethical standard, no disciplinary action would be taken against an uncooperative lawyer.[13] However, under Rule 8.1(b) of the Rules of Professional Conduct, as explained in *Martin, supra,* lawyers are required to cooperate with the Committee. Therefore, to the extent that *Mullins* differs with *Martin,* it is overruled.[14]

### V.

### CONCLUSION

Although we decline to accept the Committee's recommendation of a two-year suspension, we do not minimize the violations. Based upon the foregoing, we find that Mr. Cometti should be suspended from the practice of law for a period of fifteen months and that his full reinstatement to the Bar shall be conditional upon six months of supervised practice following his suspension.[15]

13. Syllabus Point 3 of *Mullins,* provides: "Generally, disciplinary action will not be taken by this Court solely on a charge by the committee on legal ethics that an attorney has been uncooperative with the committee."

14. Rule 8.1(b) expressly exempts a lawyer from disciplinary action concerning his failure to disclose information protected by Rule 1.6. Rule 1.6 states:

"(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

"(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

"(1) to prevent the client from committing a criminal act; or

"(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim

against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of a client."

Rule 8.1(b) is also subject to the protections afforded by the Fifth Amendment to the United States Constitution. *See generally* Center for Professional Responsibility, American Bar Association, Annotated Rules of Professional Conduct 553 (2d ed. 1992).

15. We decline to address the Committee's "pattern and practice" claim as it is too ill defined with no support except *Committee on Legal Ethics v. Farber,* 185 W.Va. 522, 408 S.E.2d 274 (1991). Although *Farber* used this phrase, it did not attempt any meaningful discussion of it. To the extent that the term may mean that we can consider the attorney's past disciplinary practices, it is covered by Syllabus Point 2 of *Committee on Legal Ethics v. Smith,* 184 W.Va. 6, 399 S.E.2d 36 (1990):

" 'Prior discipline is an aggravating factor in a pending disciplinary proceeding because it

Fifteen-month suspension and six-month supervised practice.

---

calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust.' Syllabus Point 5, *Committee on Legal Ethics v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107 (1986)."

We are not prepared to rule on the question of whether the term is designed to cover similar uncharged disciplinary violations in the absence of a complete development and briefing on the issue.