523 S.E.2d 552

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Cecelia G. JARRELL, a Member of the West Virginia State Bar, Respondent.**

No. 24009.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 1, 1999.

Decided Nov. 10, 1999.

Steven Johnston Knopp, Esquire, Lawyer Disciplinary Counsel, Charleston, West Virginia, Attorney for the Complainant.

James B. McIntyre, Esquire, McIntyre & Collias, Charleston, West Virginia, Attorney for Respondent.

1. Specifically, the HPS concluded that Ms. Jarrell did not violate Rule 8.4(d) and Rule 3.5(b) of the Rules of Professional Conduct. Those charges stemmed from various factual allegations including: Ms. Jarrell had Grand Jurors act as observers at the primary election polls in May, 1994, then had them testify about their observations to the same Grand Jury; Ms. Jarrell subpoenaed four individuals to appear before the Grand Jury on Election Day to prevent said individuals from committing election crimes; and Ms. Jarrell engaged in a pattern of ex parte communications with a judge. Because we agree with the findings of the HPS that Ms. Jarrell did not violate Rule 8.4(d) and Rule 3.5(b) of the Rules of Professional Conduct as charged in Counts I, II and III of the complaint, we do not address those charges in this opinion.

2. More specifically Rule 4.2 of the Rules of Professional Conduct provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be

RISOVICH, Judge:

This disciplinary proceeding was instituted when charges were filed against Cecelia G. Jarrell, a member of the West Virginia State Bar, by the Investigative Panel of the Lawyer Disciplinary Board ("Board"). Ms. Jarrell was charged with violating Rules 8.4(d), 4.2, 3.4(c), 3.8(b) and 3.5(b) of the Rules of Professional Conduct in a five-count complaint. The Board's Hearing Panel Subcommittee (referred to as "HPS" and sometimes the "Board") found insufficient evidence to support the alleged violations in three of the counts;[1] however, the HPS found that Ms. Jarrell violated Rule 4.2[2] of the Rules of Professional Conduct by conferring with a defendant without his counsel present. The HPS also found that Ms. Jarrell violated Rules 3.4(c)[3] and 3.8(b)[4] of the Rules of Professional Conduct by stating falsely that there had been no verbal plea offers; by arranging for the execution of a plea agreement at a date after the hearing when the plea information was sought, and by failing to disclose an executed plea agreement to a co-defendant in a murder trial for more than three months. The HPS recommended the disciplinary sanction of admonishment be imposed upon Ms. Jarrell for the violations found. The recommended sanction was agreed to by both the Office of Disciplinary Counsel ("ODC") and Ms. Jarrell, without

represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

3. Rule 3.4(c) of the Rules of Professional Conduct provides:

A lawyer shall not:
....
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists....

4. Rule 3.8(b) of the Rules of Professional Conduct provides:

The prosecutor in a criminal case shall:
....
(b) make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel....

objection. Based upon our review of the recommendation, all matters of record, and the briefs and argument of counsel, we disagree with the HPS's recommendation that Ms. Jarrell be admonished.[5] Rather, we conclude that no sanction should be imposed upon Ms. Jarrell due to extraordinary mitigating circumstances and order that the charges be dismissed.

## I. FACTS

Ms. Jarrell is an active member of The West Virginia State Bar. She was initially admitted to practice on April 5, 1988, and currently practices in Danville, Boone County, West Virginia. During the relevant time period, from 1993 to 1997, Ms. Jarrell was serving as the duly-elected Prosecuting Attorney for Lincoln County, West Virginia. She also worked as an Assistant Prosecuting Attorney in Lincoln County from August 1992 to January 1993. Because the details regarding each allegation of improper conduct vary, each pertinent violation will be discussed separately for purposes of clarity.

### A. Rule 4.2

Ms. Jarrell was charged with initiating contact with a criminal defendant without his lawyer's consent. The HPS found[6] that attorney Carson Bryan testified that he appeared late[7] for a preliminary hearing on a charge of cultivation of a controlled substance in *State v. Carl Edward Watts*, Criminal Case No. 94–F–22, only to find Ms. Jarrell and Trooper Kevin Dickson of the West Virginia Department of Public Safety talking with his client, Carl Watts, and his client's father, Randall Watts. Ms. Jarrell told Mr. Bryan that they were trying to work out the case because Mr. Bryan had been late.

Mr. Bryan was upset and requested the court reporter for the Honorable Jay M. Hoke, Judge of the Twenty-fifth Judicial Circuit, to transcribe a portion of the preliminary hearing during which Mr. Bryan placed on the record what had occurred. According to the transcript of that hearing, Carl Watts testified that Trooper Dickson had asked him during this meeting where he "got the dope from." Randall Watts, Carl's father, testified that Ms. Jarrell and Trooper Dickson tried to work a deal. Carl Watts testified that he was not advised by Ms. Jarrell that defense counsel had a right to be present.

Trooper Dickson testified before the HPS that Magistrate McCormick informed Ms. Jarrell that Randall Watts wanted to speak with her and Trooper Dickson about making a deal so both he and Carl Watts, the defendant, could leave, because their attorney was late and they did not want to wait any longer. According to the trooper, when he and Ms. Jarrell arrived in the magistrate's office, Magistrate McCormick left. Trooper Dickson stated that he and Ms. Jarrell "told Mr. Watts, they had an attorney, they probably should wait to talk to their attorney[,]" but Mr. Watts wanted to leave. While Trooper Dickson testified that Ms. Jarrell did not get any other information about the facts of the case during the meeting, on cross-examination, the trooper acknowledged that he had asked Carl Watts for the name of the person from whom he had purchased marijuana. Trooper Dickson also testified that he and Ms. Jarrell told Carl Watts that he could plead to simple possession and the cultivation charge would be dropped.[8]

Ms. Jarrell testified that upon arrival to the magistrate's office,[9] Randall Watts told

---

5. Because the Court did not unanimously approve the disposition, the case was placed on the docket for oral argument pursuant to Rule 3.12 of the Rules of Lawyer Disciplinary Procedure.

6. The facts are taken largely from the Recommended Decision of the HPS. Because no objections were made to the factual findings, we give those findings substantial deference. *See* Syl. Pt. 3, *Committee on Legal Ethics of W.Va. State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994) (holding that "substantial deference is given to the ... [HPS's] findings of fact, unless such

findings are not supported by reliable, probative, and substantial evidence on the whole record").

7. Mr. Bryan was two hours late for the preliminary hearing, because he was swimming at someone's house.

8. While the record is unclear as to the outcome of Carl Watts' criminal case, according to his attorney's testimony before the HPS, Mr. Watts was not incarcerated for the crime.

9. Ms. Jarrell testified that she thought the magistrate was present for the entire conversation she had with Randall and Carl Watts.

her that he and his son were tired of standing around waiting and that they wanted to get the case resolved. She testified that she told them "[y]ou do not have to talk to me. If your attorney hasn't shown up and you're three hours waiting, just ask the Magistrate to continue the case and you can come back on another day." Mr. Watts told her at that point that he wanted the matter resolved, because he was "not coming back here for this piddly charge." Ms. Jarrell then stated that she informed both Randall and Carl Watts of what the State would be willing to accept as a plea bargain. Ms. Jarrell then told them that if they accepted the deal, that was fine. If they chose not to accept the plea bargain, Ms. Jarrell told them that they could ask for a continuance. Finally, Ms. Jarrell testified that at no time did she try to elicit information from the defendant relative to the charges pending against him in magistrate court.

## B. Rules 3.4(c) and 3.8(b)

Ms. Jarrell was also charged with knowingly disobeying an obligation of a tribunal and failing to make a timely disclosure to defense counsel of exculpatory evidence by failing to disclose in a court hearing that a plea bargain had been offered and accepted, but not yet reduced to writing, and by failing to promptly disclose the written agreement which was signed the day after the hearing. The HPS found that Lillie Mae Trail, Charles Whittington and Greg Whittington were indicted in Lincoln County, West Virginia, for the murder of Mrs. Trail's husband. Greg Whittington was represented by attorneys Carson Bryan and Steve Thorne. Mrs. Trail was represented by attorney M. Timothy Koontz.

On January 23, 1995, Mr. Koontz filed a discovery motion seeking, in part, "any and all considerations or promises of consideration given to or on behalf of witnesses or expected or hoped for by the witnesses." Prior to the discovery motion being filed, the attorneys for Greg Whittington had already engaged in discussions about a plea agreement. They testified that they spoke with

Sergeant Parsons of the West Virginia Department of Public Safety on December 22 or 23, 1994, the date of Mr. Whittington's bail hearing.

At the same time the attempted murder charges were pending in Lincoln County against these three individuals, an unrelated malicious wounding charge was pending against the trio in Kanawha County, West Virginia, wherein it was alleged that Mrs. Trail had hired Charles Whittington and Greg Whittington to attack a different victim. Regarding the Kanawha County prosecution, John Frail, an Assistant Prosecuting Attorney for Kanawha County, faxed a letter to Ms. Jarrell on January 5, 1995, confirming discussions of a plea agreement with Greg Whittington in which Mr. Whittington would plead to first degree murder in Lincoln County and would agree to cooperate with Kanawha County prosecutors in the prosecution of Lillie Mae Trail and Charles Whittington for malicious wounding. In exchange for Greg Whittington's cooperation, Kanawha County prosecutors agreed not to pursue charges against Greg Whittington for malicious wounding. Apparently, Mr. Bryan, Mr. Thorne, Trooper Moye of the West Virginia Department of Public Safety and Ms. Jarrell were all present in Ms. Jarrell's office when the fax arrived.[10]

Greg Whittington's attorney, Mr. Bryan, testified that he considered that a plea agreement had been reached on January 5, 1995, even though the agreement was not executed until February 3, 1995. On February 3, 1995, Greg Whittington was brought from the South Central Regional Jail in Charleston, West Virginia, to Hamlin, West Virginia, to sign the above-discussed plea agreement and to have his statement videotaped. Mr. Bryan testified that he was told by Trooper Moye that he did not want Mr. Koontz, Mrs. Trail's attorney, to know about the plea agreement. According to Mr. Bryan, Ms. Jarrell also told him not to tell anyone about the agreement. Mr. Bryan further testified before the HPS, however, that he did not

---

**10.** A preliminary hearing had been scheduled for January 5, 1995, but was continued in light of the plea negotiations described *supra*.

want to disclose the plea agreement to Mr. Koontz.

On February 1, 1995, Ms. Jarrell directed Ms. Kim McCoy, her secretary, to contact Judge Hoke and ask him if Ms. Jarrell had to disclose a plea bargain entered into between the State and a defendant to a co-defendant's lawyer. After speaking with Judge Hoke, Ms. McCoy told Ms. Jarrell that the judge had said she would have to reveal a plea agreement if it was in writing. Ms. McCoy admitted that there was no completed oral and/or written plea agreement made to Greg Whittington prior to February 3, 1995.

On February 2, 1995, a hearing was held in Mrs. Trail's case concerning the various discovery motions filed by Mr. Koontz. During that hearing, the following colloquy occurred:

(by Mr. Koontz):

Number 4 is something I'm particularly interested in. Number 3 and Number 4. The terms of all plea bargains or special considerations offered by this State or any state or federal government to witnesses who will be called in the trial in this case.

(by Judge Hoke):

Well, Number 3 is already covered by the notice of intention to use bad acts under 404(b), and Number 4, are there any such plea bargains that exist at this time?

(by Ms. Jarrell):

No, your honor.

(by Judge Hoke):

Alright. I'll just do a—I'll put a continuing duty on you, that if there are such, that you bring them to the Court's attention.

(by Mr. Koontz):

Judge, what I've asked for is not a consummated plea agreement, but what I've asked for under that is the terms of all plea bargains or special considerations that have been offered by the State.

(by Judge Hoke):

Okay, I see.

(by Mr. Koontz):

And it's my understanding that no plea offers have been made at all, either in writing or orally.

(by Ms. Jarrell):

Nope.

Mr. Koontz acknowledged in his testimony before the HPS that there was no written plea agreement at the time of the February 2, 1995, hearing, although he believed that there had been a meeting of the minds as to an agreement between the State and Greg Whittington. Further, Mr. Koontz acknowledged on the record that he may not have been entitled to a plea offer, stating "I was a criminal defense lawyer. We always try to push the envelope for as much as we can get."

Although the relevant plea agreement was signed the day after the above-mentioned hearing, Ms. Jarrell did not inform Mr. Koontz about the plea agreement, even though she was under a continuing obligation to disclose it, until approximately three months later in May of 1995.[11] According to Mr. Koontz's testimony, he learned about the agreement several terms of court later from a Kanawha County prosecuting attorney.

Based upon the foregoing facts, the HPS found that Ms. Jarrell violated Rules 3.4(c), 3.8(b) and 4.2 of the Rules of Profession Conduct. In reaching this conclusion, the HPS specifically stated that:

the Hearing Panel Subcommittee does find that Respondent [Ms. Jarrell] violated Rule 4.2 by conferring with Randall Watts and Carl Watts, even though it was at the request of the Magistrate, without the presence of Mr. Watts' attorney.

. . . .

The Hearing Panel finds by clear and convincing evidence that Respondent [Ms. Jarrell] violated Rules 3.4(c) and 3.8(b) of the Rules of Professional Conduct by stat-

---

11. Ms. Jarrell testified that she delayed notifying Mr. Koontz about the plea agreement because of the ethics complaint filed against her. She testified that she attempted to have herself removed from the case once the ethics complaint was filed, but the court denied her motion to have a special prosecutor appointed. Ms. Jarrell learned of the complaint on April 3, 1995. She offered no explanation as to why she failed to disclose the agreement prior to April 3, 1995, other than her testimony that she informed Mr. Koontz of it the next time she saw him in May of 1995.

ing a falsehood, that no verbal offers had been made to Greg Whittington, instead of arguing that she was not required to provide that information, by arranging for the execution of the plea agreement to be conducted after the Trail hearing on discovery, and by failing to disclose the written plea agreement for at least three months.

The HPS relied upon the numerous mitigating factors listed below, however, in recommending that Ms. Jarrell's discipline for the violations only be an admonishment:

The Hearing Panel Subcommittee sympathizes with the position Respondent [Ms. Jarrell] found herself in. She had graduated from law school four and a half years previously, she had almost no criminal law experience, she had no peer or assistant prosecutor upon whom to rely, she held office in an extremely political milieu, and the presiding Circuit Judge felt compelled to try to do her job for her. The Subcommittee understands that any ethical violations occurred from a lack of experience rather than deliberate misconduct. Respondent chose not to run again for prosecutor and suffered from the publicity which unfortunately surrounded these proceedings. Moreover, Respondent suffered from the uncertainty caused by the Chief Disciplinary Counsel's dilatoriness in submitting written closing argument, despite requests from the Subcommittee to complete the brief.

While these factors mitigate any sanction to be imposed, they do not warrant dismissal of the charges. The Hearing Panel therefore recommends that the Supreme Court issue an admonishment to Respondent, but not impose costs of this proceeding.[12]

## II. DISCUSSION

 Our standard for reviewing recommendations of the Board regarding sanctioning a lawyer for ethical violations is set forth in syllabus point three of *Committee on Legal Ethics of the West Virginia State Bar v.*

*McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994), wherein the Court stated:

A *de novo* standard applies to a review of the adjudicatory record made before the ... [Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the ... [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the ... [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*Id.* at 287, 452 S.E.2d at 378, Syl. Pt. 3; *accord* Syl. Pt. 3, *Lawyer Disciplinary Bd. v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995). It is significant that neither the ODC nor Ms. Jarrell disputed the decision of the HPS as to the facts. We have also held, however, in syllabus point three of *Committee on Legal Ethics of West Virginia State Bar v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985), that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." *Id.* at 494–95, 327 S.E.2d at 672.

In reviewing not only the charges brought against Ms. Jarrell, but the findings and recommendation of the HPS as well, we are presented with a case of first impression regarding whether the Board must discipline a lawyer holding public office even where extraordinary mitigating circumstances exist. Counsel for Ms. Jarrell contends that the charges against his client are either not true, not proved, or if proved, do not violate ethical standards. Counsel for the Board argues that the imposition of an admonishment as a primarily symbolic penalty, as opposed to none, should be considered carefully by the Court, because the penalty adequately serves as an effective deterrent to other members of the Bar, as well as restores public confidence upon Ms. Jarrell.

---

12. We accept the HPS's recommendation that costs of the proceedings should not be imposed

in the ethical standards of the legal profession.

In determining what type of sanction, if any, is appropriate in lawyer disciplinary proceedings, it is helpful to review Rule 3.16 of the Rules of Lawyer Disciplinary Procedure. That provision provides:

> In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court or Board shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

*Id.*

Further, we have previously referred to the American Bar Association's "Standards for Imposing Lawyer Sanctions" for guidance on what relevant mitigating circumstances should be used to justify a reduction in the degree of discipline to be imposed. Those factors promulgated by the American Bar Association are:

> '(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical or mental disability or impairment; (i) delay in disciplinary proceedings; (j) interim rehabilitation; (k) imposition of other penalties or sanctions; (*l*) remorse; and (m) remoteness of prior offenses.'

*Committee on Legal Ethics of W.Va. State Bar v. Boettner,* 188 W.Va. 1, 4–5, 422 S.E.2d 478, 481–82, *cert. denied,* 506 U.S. 873, 113 S.Ct. 209, 121 L.Ed.2d 149 (1992) (citing "Standards for Imposing Lawyer Discipline," 50 (American Bar Ass'n, Center for Professional Responsibility 1991 ed.)).

In examining the sanction recommended by the HPS to be imposed upon Ms. Jarrell, it is apparent that the primary reason the HPS sought the imposition of any discipline was based largely upon the fact that Ms. Jarrell held the public office of prosecuting attorney at the time the violations occurred. Thus, in recommending the sanction of admonishment, the HPS placed great emphasis on law enunciated in syllabus point three of *Committee on Legal Ethics of West Virginia State Bar v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989), wherein this Court held that the "[e]thical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office." *Id.* at 261, 382 S.E.2d at 314, Syl. Pt. 3.

It is necessary to examine our holding in *Roark,* in light of the facts that generated it. In *Roark,* the respondent attorney pleaded guilty to six counts of the federal misdemeanor offense of possession of cocaine. *Id.* at 261–62, 382 S.E.2d at 314–15. Further, the respondent attorney was either the Mayor of Charleston, West Virginia, or the Prosecuting Attorney for Kanawha County, West Virginia, at the time the illegal acts occurred. *Id.* at 263, 382 S.E.2d at 316. Thus, the respondent attorney in *Roark* was committing criminal acts at the same time he was the chief law enforcement public official, either as mayor or prosecutor, charged with upholding the law.[13]

The instant case, however, is factually dissimilar from *Roark.* Moreover, we did not address the issue in *Roark* of whether discipline *must* be imposed on a lawyer holding public office where extraordinary mitigating circumstances existed. As we have previously held

> '[i]n disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will

---

13. In another case in which we have relied upon the fact that the lawyer held a public office, the disciplinary proceeding also arose from the lawyer's criminal conduct. *See Boettner,* 188 W.Va. at 5, 422 S.E.2d at 482 (ordering three year suspension and payment of costs where member and majority leader of State Senate pleaded guilty to failing to report on federal tax return a loan received to pay off back campaign expenses).

consider the facts and circumstances [in each case], including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate....'

*Id.* at 261, 382 S.E.2d at 314, Syl. Pt. 4, in part (quoting Syl. Pt. 2, in part, *Committee on Legal Ethics v. Mullins,* 159 W.Va. 647, 226 S.E.2d 427 (1976), *overruled in part on other grounds, Committee on Legal Ethics v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320 (1993) and Syl. Pt. 2, in part, *Committee on Legal Ethics v. Higinbotham,* 176 W.Va. 186, 342 S.E.2d 152 (1986)). Consequently, generally, ethical violations by a lawyer holding a public office are viewed as more egregious because of the betrayal of the public trust attached to the office and, therefore, the imposition of disciplinary sanctions is warranted. In rare instances, however, where extraordinary mitigating circumstances are present, it is not mandatory that a disciplinary sanction upon a lawyer holding public office be imposed. *See* Syl. Pt. 3, *Roark,* 181 W.Va. at 261, 382 S.E.2d at 314.

█ The instant matter exemplifies that rare case where extraordinary mitigating circumstances necessitate that no disciplinary measure be imposed. While Ms. Jarrell was the prosecuting attorney when the allegations giving rise to the violations occurred, none of the allegations propounded emanated from criminal conduct. Quite to the contrary, it is evident to this Court that in the instances where the HPS found that the allegations constituted an ethical violation, Ms. Jarrell's intent was to do the right thing, but her inexperience in criminal law, as well as in the duties of a prosecuting attorney, caused her improper conduct. Additionally, there was a lack of individuals from whom she could seek advice and guidance. Moreover, it is significant that no harm or prejudice came to anyone in the two instances where the HPS found Ms. Jarrell's conduct violated ethical provisions.[14] Additionally, even the HPS concluded that the violations

did not result from any intentional or deliberate misconduct on Ms. Jarrell's part. Further, the HPS acknowledged that Ms. Jarrell held office in an extremely political milieu, and the presiding Circuit Judge felt compelled to try to do her job for her. The HPS recognized that Ms. Jarrell chose not to run for prosecuting attorney again and that she had suffered from the negative publicity surrounding the proceedings. Finally, the HPS appreciated the fact that Ms. Jarrell suffered from the fact that the chief lawyer for the ODC was dilatory in failing to submit a brief to the HPS for nine months after the date the brief was to have been submitted.

## III. CONCLUSION

Based on the foregoing, the Court declines to adopt the recommendation of the HPS that Ms. Jarrell be admonished. The Court hereby orders that the charges against Ms. Jarrell be dismissed.

Charges dismissed.

Justice SCOTT did not participate.

DAVIS, Justice, dissenting.

I respectfully dissent to the majority opinion in this case because of the uncertainty this opinion creates in the legal community regarding this Court's willingness (or, in this case, unwillingness) to accept recommended dispositions which are consented to by the parties. Rule 3.12 of the Rules of Lawyer Disciplinary Procedure should be used sparingly to set aside a recommended disposition consented to by the respective parties.

Rule 3.12 of the Rules of Lawyer Disciplinary Procedure provides that "[i]f the parties consent to the recommended disposition, the matter shall be filed with the Supreme Court of Appeals for entry of an order consistent with the recommended disposition." *Id.* The rule further sets forth the procedure to be utilized when the Court does not concur with the recommended disposition. *See id.* Thus,

---

**14.** The evidence indicates that Carl Watts has never been incarcerated for the relevant criminal charges. Ms. Jarrell indicates in her brief that "[t]he only evidence in the record reveals that the charges against the defendant were never prosecuted." Likewise, even though Ms. Jarrell did not promptly disclose the plea agreement

between the State and Greg Whittington to the co-defendant's counsel, Mr. Koontz, Ms. Jarrell still informed Mr. Koontz of the agreement well in advance of trial. The murder trial for Lillie Mae Trail did not occur until October 1997 and the plea agreement was disclosed in May of 1995.

it is clear that even "where the parties consent to a recommended disposition of a charge, this 'Court does not [have to] concur with the recommended disposition.'" *Lawyer Disciplinary Bd. v. Kupec*, 202 W.Va. 556, 568, 505 S.E.2d 619, 631 (1998) (quoting Rule 3.12 of the Rules of Lawyer Disciplinary Procedure).

This Court, nonetheless, should only refuse to concur with a recommended disposition, consented to between the parties, in those few cases where correct procedures were not followed or where a grave injustice will occur if the recommended disposition is accepted. For instance, in *Kupec*, we did not concur with the recommended disposition that charges against a lawyer be dismissed, because the HPS failed to comply with the procedures outlined in the Lawyer Disciplinary Rules by failing to hold an evidentiary hearing. 202 W.Va. at 573, 505 S.E.2d at 636. We indicated in that case, however, that after the necessary record was developed on remand, the HPS could once again recommend that the charges be dismissed. *Id.* n. 30.

In the instant case, the Hearing Panel Subcommittee ("HPS") found that Ms. Jarrell violated Rule 4.2 of the Rules of Professional Conduct by conferring with a defendant without his counsel present. The HPS further found that Ms. Jarrell violated Rules 3.4(c) and 3.8(b) of the Rules of Professional Conduct by stating falsely that there had been no verbal plea offers, by arranging for the execution of a plea agreement at a date after the hearing when the plea information was sought, and by failing to disclose an executed plea agreement to a co-defendant in a murder trial for more than three months. Ms. Jarrell never objected to any of these factual findings. Further, when recommending its disposition for Ms. Jarrell's violations, the HPS acknowledged and relied upon all of the mitigating factors outlined by this Court in its majority opinion. Yet, the Court now finds those same factors "extraordinary," in order to justify its decision to dismiss the charges and refuse to follow the recommendation of the HPS which was to sanction Ms. Jarrell with the most minimal punishment possible—an admonishment.

Quite simply stated, there is no justifiable reason for this Court to have refused to adopt the recommended decision of the HPS, which was consented to by Ms. Jarrell. By failing to adopt the original recommended disposition of admonishment all the majority has really accomplished is to delay Ms. Jarrell's ability to put this bad experience behind her. Further, the majority has created more embarrassment and humiliation for Ms. Jarrell by etching the details of her ethical violations forever in the law reporters of this State. This undoubtedly was something she was hoping to avoid by voluntarily consenting to the most minimal recommended disposition of an admonishment.

For the foregoing reasons, I respectfully dissent.